OPINION OF THE COURT
James A. Yates, J.
*540 Wayne Rice is charged with criminal possession of a controlled substance in the third degree (Penal Law § 220.16 [1]). Initially, his car was stopped for failing to signal a change of lanes. When the police saw a folding knife clipped to his pants pocket he was arrested. Following a strip search in a police station house, cocaine was recovered from a plastic package in his underwear. He challenges the lawfulness of the police conduct leading to the search. In particular, he challenges the stop of his vehicle and he challenges the reasonableness of the subsequent strip search at the precinct. Because the search was the product of an unauthorized traffic stop, his motion to suppress evidence is granted.
The car Mr. Rice was driving was allegedly stopped for changing lanes without signaling. However, the Vehicle and Traffic Law does not require the operator of a motor vehicle to signal every lane change. While it is a violation of the Vehicle and Traffic Law to make an unsafe lane change, and appropriate signaling is required when needed to make a lane change safely, where a lane change can be made with “reasonable safety” without signaling, it is not a violation of the Vehicle and Traffic Law to move from one lane to another without signaling.
In this case, because the police did not have an objective reason to believe that the lane change was unsafe, they did not have an objective reason to stop the car, notwithstanding the failure to signal.
Findings of Fact
On February 10, 2005, at around 9:30 p.m., Police Officers John Hoffman and Daniel Brennan were patrolling within the 30th Precinct in an unmarked car as part of a robbery unit detail. They observed Mr. Rice driving a Mazda northbound on Amsterdam Avenue. Initially, they observed no equipment or moving violations. After a few blocks, at 153rd Street, the car moved from one lane to another without signaling. Seven blocks later at 160th Street, the car moved back to the original lane, again without signaling. The officers “ran the license plates” and were awaiting a response when, three blocks later, at 163rd Street, they pulled the car over.
Upon demand, Mr. Rice produced a valid driver’s license. In response to a request to see the vehicle registration, the defendant explained that it was a rental. Mr. Rice opened the glove compartment, containing “a bunch of papers” one of which was an Enterprise car rental agreement, listing Sylena Cole as the *541 lessee, indicating a rental from Enterprise Rent-a-Car in Clifton Park, New York, on February 7th with no required return date.[1] The officer told him, “There is a problem, a female’s name is on here.” The defendant went back to the glove box and produced a second, computer generated, rental agreement with his name and driver’s license identification number entered on a lease agreement stipulating a return date of February 8th.[2] The computer check was completed at the scene, indicating that the car was an Enterprise rental. The car was not reported to be stolen.
Officer Hoffman ordered Mr. Rice to step out of the car. As he did so, the officer asked if the defendant was carrying any weapons that he should know about. Mr. Rice answered “no” but, as he opened the car door and began to exit, the officer observed a silver folded knife clipped to his pants pocket. The officer grabbed the knife and said to the defendant: “I asked you if you had anything, any weapons or anything.” The defendant stated: “I forgot about it.” Officer Hoffman then patted down the defendant for other weapons and felt an object, a bulge, the “size of a tennis ball,” between the defendant’s legs and groin area.[3] He suspected the package contained drugs. According to the officer, he handcuffed the defendant for his own safety and arrested the defendant because of the rental agreement and the weapon.[4]
The defendant was taken to a nearby precinct where he was searched. A little more than $1,800 was recovered. He was then removed to a back area of the precinct where he was strip *542 searched. The defendant was carrying a packet of drugs in his groin area between two pairs of underwear.
Conclusions of Law
The defendant contends that the alleged traffic violation is pretextual and that the primary motivation of the officers was to investigate his activity without proper cause. However, in the absence of evidence to the contrary, the court accepts the officers’ testimony that the car did change lanes without signaling. Accordingly, the officers’ true motive for the car stop is irrelevant. (Whren v United States, 517 US 806 [1996].)
The court also recognizes that, in the wake of Whren v United States, there remains an open question whether New York requires probable cause (People v Robinson, 97 NY2d 341 [2001]), or merely reasonable suspicion (People v Ingle, 36 NY2d 413 [1975]) to justify an automobile stop for a traffic infraction. Under the facts of this case, the distinction carries no consequence and, for sake of discussion, the court will assume the more lax standard, reasonable suspicion. The evidence was that, over a 10 block stretch of roadway, Mr. Rice moved from one lane to another twice without signaling. There is no testimony that the moves were made unsafely, erratically, or in the vicinity of other cars. There is no claim that the officers had either probable cause or reasonable suspicion to believe that an unsafe lane change was observed. Rather, the People argue that an unsignaled lane change is per se, in and of itself, a violation of law justifying a car stop. Thus, a question of law arises: Does the Vehicle and Traffic Law prohibit an unsignaled lane change made in complete safety? As applied to the facts of this case, the distinction between probable cause and reasonable suspicion is irrelevant.
An officer’s belief, even a subjective good faith belief, that he observed a traffic infraction is insufficient to justify a stop. Rather, an objective standard is used. If the officer observes a traffic infraction, he may stop the car. But where the officer’s belief is based on an erroneous interpretation of law, the stop is illegal at the outset and any further actions by the police as a direct result of the stop are illegal. (Matter of Byer v Jackson, 241 AD2d 943, 944-945 [4th Dept 1997].)
Vehicle and Traffic Law § 1163 (“Turning movements and required signals”) provides, in part:
“No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the *543 roadway as required in section eleven hundred sixty, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided.” (Subd [a].)
The statute describes two distinct kinds of “movement” by a vehicle, a “turn” and a “move.” A “turn” is a movement “from a direct course” to the “right” or “left.” A “turn” can also include a U-turn (see Vehicle and Traffic Law § 1160) or entry from a public roadway to a private road or driveway. (Matter of Byer v Jackson, supra.) In addition to “turns,” the term “movement” also includes a “move right or left upon a roadway” without turning from a direct course. This would include a lane change.
The statute provides that a “movement,” whether it be a “turn” or a “move right or left upon a roadway,” may not be made “unless [it] can be made with reasonable safety.” But, the statute only requires an “appropriate signal,” that is a “signal of intention” (Vehicle and Traffic Law § 1163 [b]) when a car is about to make a “turn.” A change of lanes is not a turn, it is a move right or left upon the roadway. Subdivision (a) does not require a signal of intention for every such movement.
Section 1163 (a) needs to be read in conjunction with several surrounding provisions of the Vehicle and Traffic Law. For example, section 1128 of the Vehicle and Traffic Law, which specifically addresses rules for “[d]riving on roadways laned for traffic,” provides that a “vehicle shall be driven as nearly as practicable entirely within a single lane [preventing straddling] and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.” (Vehicle and Traffic Law § 1128 [a].) Signals are not required for all such movements.
As well, section 1163 (a) cross-references section 1160 which describes the position that a car must be placed in before turning. The requirement to properly position the vehicle at a curbside or shoulder lane before turning contained in these two provisions cannot, as a practical matter, apply to lane changes.
Similarly, section 1163 (b) requires that a signal of intention to turn “shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning.” *544 Clearly, this provision applies to full turns and not to mere lane changes.
In sum, a plain reading of the language of the statute read alone or in pari materia with surrounding provisions compels the conclusion that “turns” and “lane changes” are separate and distinct movements within the Vehicle and Traffic Law.
This understanding is well supported by a review of the legislative history of the Vehicle and Traffic Law. Section 1163 is derived in part from an earlier provision, section 83 (1) of the Vehicle and Traffic Law, written in 1929. It provided that “[b]efore turning to the right or left . . . the driver of a vehicle shall give warning, either by holding his arm straight out . . . or by operating an adequate mechanical signal device.” Section 83 (2) provided that “before turning” or “changing the course of such vehicle” the driver was obligated to “see that there is sufficient space to make such movement in safety” and to “give a visible or audible signal... of his intention.” The statute, at the time, dealt exclusively with turns and contained no provision regarding lane changes.
In 1957, the Vehicle and Traffic Law underwent an overall recodification based upon the Uniform Vehicle Code (L 1957, ch 698). A new provision, Vehicle and Traffic Law § 1163 (a), provided that:
“No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in section eleven hundred sixty, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement.”
As can be seen, the Uniform Vehicle Code added two new features to the law. For one, the law for the first time addressed the question of movements left or right (lane changes). It provided that turns and lane changes should not be made unless they could be completed in safety.
Secondly, the law abolished the per se requirement to signal all turns. The new law only required signals where “other traffic may be affected” by the turn. This second change in the law proved unsatisfactory and the law was restored to its earlier *545 form in 1964 (L 1964, ch 653). As part of a revised Uniform Vehicle Code proposed in 1962 and codified in 1964, the current form of Vehicle and Traffic Law § 1163 was adopted. At the time of the restoration of a per se requirement to signal all turns, the Senate sponsor explained:
“It [the proposed law] makes a very desirable change in the right of way rules as applied to vehicles turning left at intersections and to vehicles which have stopped at stop and yield intersections. The first change is very essential because experience in this state, since the uniform code provisions were adopted in 1957, has indicated that the present rule is not desirable and cannot be enforced.” (Sponsor’s Mem, attached to letter from Sen. Edward Speno to Sol Neil Corbin, Counsel to Governor, Apr. 1, 1964, Bill Jacket, L 1964, ch 653, at 21 [emphasis added].)
As Robert W. Marshlow, writing in support of the new code on behalf of the Office for Local Government, explained,
“As a result of the deletion of this language [requiring evidence that other traffic may be affected before requiring a signal], the driver of a motor vehicle will be legally obligated to make signals at the time of any turning movement even though there is no other traffic in the vicinity of their respective vehicles.” (Marshlow letter to Sol Neil Corbin, Counsel to Governor, Apr. 16, 1964, Bill Jacket, L 1964, ch 653, at 8.)
Accordingly, the intention of the 1964 revision was to reinstate the per se requirement to signal a turn which had existed from 1929 to 1957. The last clause of section 1163 (a) (“in the event any other traffic may be affected by such movement”) was deleted. The desired change was meant to require, as in the past, signals for all turns. However, there was no desire to add, for the first time, a per se requirement of signaling lane changes as well.
The People point to Vehicle and Traffic Law § 1163 (d) which provides:
“The signals provided for in section eleven hundred sixty-four shall be used to indicate an intention to turn, change lanes, or start from a parked position and not be flashed on one side only on a parked or disabled vehicle, or flashed as a courtesy or ‘do pass’ signal to operators of other vehicles approaching from the rear.”
*546 They argue that this provision, in addition to section 1163 (a), requires signals for lane changes. However, this section is not written to require signals for all lane changes or starts from a parked position. Instead, it merely describes the kind of signals that may be used when a vehicle, in order to proceed in complete safety, starts from a parked position, turns, or changes lanes. It limits the occasions when hand signals are sufficient and prohibits the older custom of using directional signs to signal a disabled or parked vehicle or as a courtesy signal. As explained by Commissioner of the Department of Motor Vehicles William S. Hults (through Arnold W. Wise, counsel) in his letter, dated April 7, 1964, to the Governor, urging approval of chapter 653 of the Laws of 1964, “[t]his practice, although quite prevalent, is dangerous.” (Bill Jacket, L 1964, ch 653, at 6.)
In sum, the Vehicle and Traffic Law requires use of directional signals on all occasions when a turn — a change of direction — is made, but does not require signaling when a lane change can be made in complete safety without such signal. Accordingly, I find that the automobile stop in this case violated the defendant’s Fourth Amendment and New York State constitutional right to be free of unreasonable searches and seizures — thereby, compelling suppression of the fruits of that unlawful stop.

. Defendant asserts that Ms. Cole is his girlfriend. However, in the absence of testimony from a witness on that point, the court cannot speculate about their relationship.

. Penal Law § 165.05 provides that retention of a rental car becomes “unauthorized” when it is held for seven days beyond the limit of the agreement and a demand for return has been made. Here, the People do not contend, nor could they, that Mr. Rice was arrested for an unauthorized retention of a rented car.

. The package was produced in court. It is a circular plastic packet, 3s/4 inches in diameter and about an inch and a half thick. It is light in weight— just a few ounces.

. The knife blade measured four inches in length. Section 10-133 (b) of the Administrative Code of the City of New York prohibits possession of a knife with a blade of four inches or more in a public place — with a number of exceptions, including possession by Boy Scouts and possession by a person when it is being used for or transported immediately to or from a place where it is used for hunting, fishing, camping, hiking, picnicking or any employment, trade or occupation customarily requiring the use of such knife. Illegal possession is not a crime, but it is a violation punishable by a $300 fine and up to 15 days’ imprisonment.