THE PEOPLE OF THE STATE OF NEW YORK, Appellant, v VINCENT LITTO, Respondent. [822 NYS2d 130]—

Appeal by the People, as limited by their brief, from so much of an order of the Supreme Court, Kings County (Walsh, J.), dated January 31, 2005, as granted those branches of the defendant's omnibus motion which were to dismiss counts two and six of the indictment, charging vehicular manslaughter in the second degree and driving while intoxicated, respectively.

Ordered that the order is affirmed insofar as appealed from.

The defendant was driving a car with three passengers when he allegedly inhaled a portion of the contents of a spray can of "Dust-Off," veered into oncoming traffic, and collided with an oncoming car. He was indicted and charged with, inter alia, driving while intoxicated pursuant to Vehicle and Traffic Law § 1192 (3) and vehicular manslaughter in the second degree pursuant to Penal Law § 125.12. Despite the People's argument to the contrary, the trial court properly dismissed those two charges. The history and structure of Vehicle and Traffic Law § 1192 (3) demonstrate that the Legislature intended it to apply only to intoxication caused by alcohol.

The first statute to prohibit driving while intoxicated was Highway Law former § 290 (3), passed in 1910 (*see* L 1910, ch 374). Over time, the law was amended, inter alia, allowing evidence of blood alcohol content (*see* L 1941, ch 726), adding a

section prohibiting the operation of a motor vehicle while "impaired by the consumption of alcohol" (*see* L 1960, ch 184, § 1), and creating presumptions of impairment and of intoxication where a driver's blood alcohol content reached specific levels (*id.*; *see also* L 1970, ch 275, § 2).

Significantly, in 1966, the Legislature added Vehicle and Traffic Law § 1192 (4), making it a misdemeanor to operate a motor vehicle while "impaired by the use of a drug" (*see* L 1966, ch 963). In a letter to the Governor, the bill's sponsor, Senator Norman F. Lent, wrote, "as presently written, [the provision prohibiting driving while intoxicated] pertains to the operation of a motor vehicle while under the influence of alcohol" and "New York is one of the few remaining major states without a law against operating a motor vehicle while one's ability is impaired by the use of drugs [or] narcotics" (*People v Grinberg*, 4 Misc 3d 670, 676 [2004], quoting letter of Senator Norman F. Lent, June 7, 1966, Bill Jacket, L 1966, ch 963). Thus, contrary to the view of our dissenting colleague, the Legislature clearly expressed its intent that Vehicle and Traffic Law § 1192 (4) was enacted to preclude operation of a motor vehicle while under the influence of drugs or narcotics. By implication, the Legislature recognized that Vehicle and Traffic Law § 1192 (3) did not proscribe such conduct. For us to hold otherwise would render section 1192 (4) superfluous, a result to be avoided in statutory construction (*see Matter of Branford House v Michetti*, 81 NY2d 681 [1993]).

Furthermore, Vehicle and Traffic Law § 1192 (9), which permits conviction under Vehicle and Traffic Law § 1192 (1), (2), or (3), even where the defendant is only charged with violating Vehicle and Traffic Law § 1192 (2) or (3), reflects the Legislature's understanding that subdivisions (1), (2), and (3) are all alcohol-related and that subdivision (1) is a lesser-included offense of subdivisions (2) and (3) (*see People v Farmer*, 36 NY2d 386 [1975]; *People v Bayer*, 132 AD2d 920 [1987]). By contrast, Vehicle and Traffic Law § 1192 (9) does not allow a violation under subdivision (4) to be treated as a related or lesser-included offense (*see People v Bayer, supra*). Also, that a violation of either Vehicle and Traffic Law § 1192 (3) or (4) is a misdemeanor indicates that the Legislature did not view the impairment in subdivision (4) as a lesser degree of the intoxication in subdivision (3), or to be subsumed by subdivision (3) (*id.*).

Finally, New York courts have long held that Vehicle and Traffic Law § 1192 (1), (2), and (3) are all degrees of alcohol-related impairment (*see People v Farmer, supra*), and intoxication has

been defined as a greater degree of impairment caused by the voluntary consumption of alcohol (see *People v Cruz*, 48 NY2d 419 [1979]; *People v Stack*, 140 AD2d 389 [1988]; *People v Bayer, supra; People v Ottomanelli*, 107 AD2d 212 [1985]; *People v Weaver*, 188 App Div 395 [1919]). Mastro, Lunn and Covello, JJ., concur.

Ritter, J.P., dissents and votes to reverse the order insofar as appealed from, on the law, deny those branches of the defendant's omnibus motion which were to dismiss counts two and six of the indictment, and reinstate those counts, with the following memorandum: I disagree with my colleagues that an "intoxicated condition" within the meaning of Vehicle and Traffic Law § 1192 (3) is limited to that caused by the consumption of alcohol. Rather, although the case law discussing and applying the subdivision has frequently involved the consumption of alcohol, such a limitation is not compelled by the plain language of the statute, by the expressed intent of the Legislature in enacting or amending the same, or by controlling case law. Further, applying such a limitation would run contrary to the goal of the legislation to keep the roads safe from drivers who are incapable of employing the physical and mental abilities needed to operate a vehicle as a reasonable and prudent driver without regard to what substance gave rise to such an intoxicated condition. Consequently, I respectfully dissent.

The defendant was indicted for, inter alia, driving while intoxicated pursuant to Vehicle and Traffic Law § 1192 (3) and vehicular manslaughter in the second degree based upon allegations that he veered into oncoming traffic and collided with an oncoming car after inhaling from a spray can of "Dust-Off." As a result of the collision, it is alleged, one of the occupants of the other vehicle was killed, two of the occupants of the other vehicle were injured, and two of the defendant's passengers were injured. The defendant moved to dismiss those counts on the ground that a violation of Vehicle and Traffic Law § 1192 (3) was limited to an intoxicated condition caused by the consumption of alcohol. The Supreme Court agreed and granted such relief. I would reverse the Supreme Court's order insofar as appealed from.

The primary goal of the courts in interpreting a statute is to determine and implement the Legislature's intent (see *Matter of Tompkins County Support Collection Unit v Chamberlin*, 99 NY2d 328 [2003]). The courts first look to the statute's plain language, as that represents the most compelling evidence of the Legislature's intent (*id.*). However, "the legislative history of an enactment may also be relevant and 'is not to be ignored,

even if words be clear' " (*Riley v County of Broome*, 95 NY2d 455, 463 [2000], quoting McKinney's Cons Laws of NY, Book 1, Statutes § 124, at 252; *see also Matter of Tompkins County Support Collection Unit v Chamberlin, supra*).

Nearly a century ago, the Legislature enacted the first statute in New York to prohibit driving while "in an intoxicated condition" (*see* L 1910, ch 374, § 290 [3]; *see also People v Cruz*, 48 NY2d 419, 424 [1979]; King and Tipperman, *The Offense of Driving While Intoxicated: the Development of Statutory and Case Law in New York*, 3 Hofstra L Rev 541, 544 [1975]). However, the Legislature did not and never has defined what is meant by "an intoxicated condition." Rather, this was left to the courts. The statute was initially applied, in the main, to cases involving intoxication by the consumption of alcohol (*see e.g. People ex rel. Seagrist v Mederer*, 33 NYS2d 114 [1942]; *People v Coppock*, 206 Misc 89 [1954]; *People v Kovacik*, 205 Misc 275 [1954]; *People v Weaver*, 188 App Div 395 [1919]). Consequently, the definitions of intoxication found in the case law were generally referable to alcohol. The Court of Appeals' determination in *People v Cruz* (48 NY2d 419 [1979]) is illustrative. In *Cruz*, the defendant was charged under Vehicle and Traffic Law § 1192 (1) and (2) for driving while intoxicated on alcohol. In rejecting a challenge to those subsections as unconstitutionally vague, the Court of Appeals held that intoxication is "a greater degree of impairment which is reached when the driver has voluntarily consumed alcohol to the extent that he is incapable of employing the physical and mental abilities which he is expected to possess in order to operate a vehicle as a reasonable and prudent driver" (*id*. at 428; *see People v Weaver, supra*).

However, not all cases defined intoxication in reference to alcohol. As early as 1937, this Court held: "The term 'intoxication' includes also the condition produced by excessive use of agencies other than alcoholic liquor, when they are taken voluntarily" (*People v Koch*, 250 App Div 623, 625 [1937]). In *Koch*, the driver was under the influence of luminol, a drug prescribed by his doctor for headaches (*see also Otero v Town of Southampton*, 194 F Supp 2d 167 [2002], *affd* 59 Fed Appx 409 [2d Cir, Mar. 7, 2003]; *People v Springs*, 8 Misc 3d 133 [A], 2005 NY Slip Op 51153[U] [2005]; *People ex rel. Seagrist v Mederer, supra; but see People v Bayer*, 132 AD2d 920 [1987]). Despite this expansive definition of intoxication in the case law, prosecutions for driving while intoxicated focused on the consumption of alcohol until the later-1960s (*see e.g. Matter of Van Wormer v Tofany*, 28 AD2d 941 [1967]; *Matter of Prudhomme v Hults*, 27 AD2d 234

[1967]). At that time, the use of illegal drugs, or at least a general public awareness of the same, began to come to the fore (*see e.g.* 4 West's Encyclopedia of American Law, Medical Malpractice at 30-33, 7 West's Encyclopedia of American Law, Narcotics Law at 164-165 [2004]). In 1966, the Legislature amended Vehicle and Traffic Law § 1192 to prohibit driving when "the person's ability to operate such a motor vehicle is impaired by the use of a drug as defined in this chapter." This became Vehicle and Traffic Law § 1192 (4). The legislation sought "to extend provisions applying to operating of motor vehicle or motorcycle while in intoxicated condition, to include operating while ability is impaired by use of drug" and to define such drugs (*see* 1966 NY Legis Record & Index, Senate Introductory Record No. 1215, at 114). The sponsor of the bill, Senator Norman F. Lent, urged passage on the grounds that Vehicle and Traffic Law § 1192 (2) as then written, "pertain[ed] to the operation of a motor vehicle while under the influence of alcohol" (*see* Letter of Senator Norman F. Lent, June 7, 1966, Bill Jacket, L 1966, ch 963). Senator Lent intended his bill to impose "equal sanctions" on persons convicted of driving while under the influence of a drug (*id.*). Senator Lent asserted that, "New York is one of the few remaining major states without a law against operating a motor vehicle while one's ability is impaired by the use of drugs [or] narcotics," and argued that the bill was needed to curb the "present practice employed by defendants in drunk driving prosecutions of claiming they were not drunk, but 'merely' under the influence of a drug or narcotic prescribed by their physician" (*id.*). Vehicle and Traffic Law § 114-a initially defined "drug" for purposes of section 1192 (4) to include certain depressants, hallucinogenics, narcotics, and stimulants. In 1973, section 114-a was amended to define "drug" as any substance listed in Public Health Law § 3306 (L 1973, ch 163, § 27).

I find nothing in this legislative and case law background to compel a conclusion that an intoxicated condition within the meaning of Vehicle and Traffic Law § 1192 (3) is limited to that caused by the consumption of alcohol.

Initially, although numerous cases, including some from the Court of Appeals, have defined intoxication in reference to alcohol (*supra*), I do not read any controlling case law as purporting to define intoxication to be so limited, or as announcing a conclusion that the Legislature intended such a limitation. Thus, the issue presented has not already been determined by controlling case law.

Further, the plain meaning of intoxication, while clearly refer-

able to the consumption of alcohol, is not limited to the same. As noted, *supra*, the Legislature has never defined what is meant by "an intoxicated condition." However, Webster's Third New International Dictionary (2002) defines "intoxicate" as, inter alia, "to excite or stupefy by alcoholic drinks or a narcotic [especially] to the point where physical and mental control is markedly diminished." Webster's defines "intoxication" as, inter alia, "poisoning or the abnormal state induced by a chemical agent (as a drug, serum, or toxin)" and as "the quality or state of being drunk." Thus, by definition, intoxication is not limited to the consumption of alcohol. Indeed, as is clearly demonstrated by the allegations at bar, a driver may be properly described as being in an "intoxicated condition" from substances other than alcohol, i.e., a driver may voluntarily ingest a substance other than alcohol which renders him or her incapable of employing the physical and mental abilities needed to operate a vehicle as a reasonable and prudent driver. This conclusion finds support in the interpretation of the word intoxication in the criminal law. Under Penal Law § 15.25, a defendant is permitted to offer evidence of intoxication to negative an element of the crime charged. Intoxication within the meaning of Penal Law § 15.25 is not limited to the consumption of alcohol (*see e.g. People v Rodriguez*, 76 NY2d 918 [1990] [narcotics]; *People v Agrillo*, 57 AD2d 869 [1977] ["drugs"]; *People v Nater*, 56 AD2d 664 [1977] [methadone]; *People v Trisvan*, 49 AD2d 913 [1975] [alcohol and heroin]; *People v Carlo*, 46 AD2d 764 [1974] [hallucinogenic]). There is a presumption of statutory construction that a similar meaning attaches to the use of similar words as they appear in other statutes of like import (*see* McKinney's Cons Laws of NY, Book 1, Statutes § 236, at 403; *People v Hylton*, 139 Misc 2d 645 [1988]; *People v Bart's Rest. Corp.*, 42 Misc 2d 1093 [1964]).

In addition, the parties have not cited, and research has not revealed, any evidence of an expressed legislative intent to limit the definition of an intoxicated condition within the meaning of Vehicle and Traffic Law § 1192 (3) to that caused by the consumption of alcohol. I do not read Senator Lent's comments (*supra*) as expressing such an intent. Rather, I read them as a description of the application of the law and the defenses thereto as of 1966. Indeed, despite our holding in *Koch*, and the other cases, *supra*, applying the term intoxication to the consumption of substances other than alcohol, the Legislature never sought to amend the statute to limit the term intoxication to the consumption of alcohol, although the Legislature amended the statute numerous times between 1937 and 1966, and is presumed to have known of existing judicial decisions (*see Foy v 1120 Ave. of the Ams. Assoc.*, 223 AD2d 232 [1996]).

Finally, limiting the meaning of an intoxicated condition to that caused by the consumption of alcohol would create a gap in the statutory scheme that would be contrary to the goal of the legislation to keep the roads safe from incapacitated drivers. As noted, *supra*, there are clearly any number of substances other than alcohol which, if voluntarily ingested, would render a driver incapable of employing the physical and mental abilities needed to operate a vehicle as a reasonable and prudent driver. Such a driver is no less a menace to the roads than is a drunken driver. However, applying the interpretation of Vehicle and Traffic Law § 1192 (4) urged by the majority, such a driver could not be prosecuted thereunder unless the substance was listed in Public Health Law § 3306. Although the listings under Public Health Law § 3306 are extensive, they cannot hope to be all-inclusive or to keep apace with all of the substances that might result in intoxication. Surely the Legislature did not intend that drivers of such equal culpability should escape prosecution under Vehicle and Traffic Law § 1192 based upon the happenstance that the intoxicating substance of choice was neither alcohol nor listed in Public Health Law § 3306. (Neither the People nor the defendant in the case at bar addressed the issue of whether any ingredient in "Dust-Off" is listed under Public Health Law § 3306. Thus, I venture no opinion as to whether this case would be subject to prosecution under Vehicle and Traffic Law § 1192 [4].)

In sum, a conclusion that an intoxicated condition within the meaning of Vehicle and Traffic Law § 1192 (3) is limited to that caused by the consumption of alcohol is not supported by the plain language of the statute, by an expressed intent of the Legislature in enacting or amending the same, or by controlling case law, and would run contrary to the goal underlying the same. Consequently, I would reverse the order insofar as appealed from and reinstate counts two and six.