*299 OPINION OF THE COURT
Andrew M. Engel, J.
The defendant previously moved, inter alia, for the suppression of statements he allegedly made in this matter. Pursuant to the order of Judge Francis D. Ricigliano, this motion was granted to the extent of ordering a hearing be held to determine whether the subject statements were obtained involuntarily within the meaning of CPL 60.45 (2) (b) (ii). Judge Ricigliano specifically excluded the issue of probable cause from the hearing. Nevertheless, for reasons unexplained, prior to the hearing, the parties stipulated that the issue of reasonable suspicion to have stopped the defendant’s vehicle in the first instance, pursuant to People v Ingle (36 NY2d 413 [1975]), was in issue and should be determined by the hearing court.
A Huntleyllngle hearing was held in this matter on April 13, 2007.
The defendant is charged with driving while intoxicated, pursuant to Vehicle and Traffic Law § 1192 (2) and (3), unsafe lane change, pursuant to Vehicle and Traffic Law § 1128 (a), and changing lanes without signaling, pursuant to Vehicle and Traffic Law § 1163 (d).
The burden is on the People to prove the statements in question voluntary beyond a reasonable doubt before their admission into evidence before the jury on the People’s case-in-chief at trial. (People v Huntley, 15 NY2d 72 [1965]; People v Valerius, 31 NY2d 51 [1972]; People v Anderson, 42 NY2d 35 [1977].)
In an attempt to meet their burden, the People called Trooper Robert DeCocco to testify. The defendant did not call any witnesses.
After listening to Trooper DeCocco and observing his demeanor, the court finds his testimony to be credible. Trooper DeCocco testified that on January 1, 2006, at approximately 4:10 a.m., he was traveling eastbound on the Southern State Parkway, in a marked patrol vehicle along with a Trooper Be-dell. At that time, west of exit 18, on the Southern State Parkway in Nassau County, he observed a grey Plymouth automobile move from one lane to another without signaling. Trooper DeCocco then pulled the Plymouth over to the side of the road and approached the vehicle on foot.
Trooper DeCocco approached the driver’s side of the Plymouth, where he observed the defendant to be the driver. Trooper DeCocco asked the defendant where he was coming from, to *300 which the defendant replied that he was coming from a party. The defendant was not under arrest at that time, and, neither Trooper DeCocco nor Trooper Bedell had made any threats or promises to the defendant. To this point, according to Trooper DeCocco, he had not made any particular observations about the defendant and did not suspect the defendant of driving while intoxicated.
Trooper DeCocco then directed the defendant to get out of the Plymouth and walk around to the front of that vehicle. According to the Trooper he did so because he was standing in a moving lane of traffic while talking to the defendant at the driver’s side window, and he wanted to move to a more safe location while continuing the conversation. The defendant exited his vehicle and walked around to the front with Trooper De-Cocco. The defendant was not under arrest at this time.
While in front of the defendant’s vehicle, now one to two minutes after the initial stop, Trooper DeCocco asked the defendant if he had had anything to drink. The defendant responded, in sum and substance, that he had had four or five glasses of beer and/or wine and was driving home. No threats or promises had been made to the defendant at this time. Trooper DeCocco further testified that at or about the time this statement was made he observed the defendant to have the odor of alcohol about him and watery eyes.
The defendant raises no argument as to the voluntariness of the statement. He does, however, vigorously challenge the propriety of the initial stop for changing lanes without signaling. The defendant correctly points out that there was absolutely no testimony offered by Trooper DeCocco that the defendant changed lanes in an unsafe manner, in violation of Vehicle and Traffic Law § 1128 (a) and, relying on People v Rice (11 Misc 3d 539 [Sup Ct, NY County 2006]), argues that neither Vehicle and Traffic Law § 1163 (d), nor any other section for that matter, mandates that a driver signal when changing lanes. The defendant argues that because there is no legal requirement to signal a lane change, any statements he may have made were the product of an unauthorized traffic stop, in violation of his Fourth Amendment and New York State constitutional right against unreasonable search and seizure, mandating their suppression.
The defendant correctly points out that Vehicle and Traffic Law § 1163 (a) describes two distinct types of “movements” upon a roadway, one being a “turn,” made “at an intersection ... to enter a private road or driveway, or . . . from a direct *301 course,” and the other being a “move,” made “right or left upon a roadway.” The defendant is also correct that Vehicle and Traffic Law § 1163 (a) requires both of these movements to “be made with reasonable safety,” and that this subdivision only prohibits a “turn [of] any vehicle without giving appropriate signal in the manner hereinafter provided.” Vehicle and Traffic Law § 1163 (a) is silent as to the need to use a signal when making a “move” (i.e., changing lanes).
The defendant further argues that while Vehicle and Traffic Law § 1163 (d) states that
“[t]he signals provided for in section eleven hundred sixty-four shall be used to indicate an intention to turn, change lanes, or start from a parked position and not be flashed on one side only on a parked or disabled vehicle, or flashed as a courtesy or ‘do pass’ signal to operators of other vehicles approaching from the rear,” this subdivision merely describes permissive and prohibited uses of signals.
The defendant further argues that to read this subdivision as being mandatory would render Vehicle and Traffic Law § 1163 (b) and (c), which describe the distance at which signals are to be used for turns and that signals are to be used for stops and sudden decreases of speed, respectively, superfluous.
The defendant also adopts the interpretation of the legislative history of Vehicle and Traffic Law § 1163 set forth in People v Rice (supra), in urging that subdivision (d) thereof is a suggestion rather than a mandate. Specifically, the court therein noted that Vehicle and Traffic Law § 1163 was derived, in part, from Vehicle and Traffic Law former § 83 (1), written in 1929, providing, inter alia, “Before turning to the right or left . . . the driver of a vehicle shall give warning, either by holding his arm straight out . . . or by operating an adequate mechanical signal device.” The court further noted (11 Misc 3d at 544) that “[section 83 (2) provided that ‘before turning’ or ‘changing the course of a vehicle’ the driver was obligated to ‘see that there is sufficient space to make such movement in safety’ and to ‘give a visible or audible signal ... of his intention.’ ” As can be seen, at that time, the statute dealt exclusively with turns and did not make any provision for changing lanes.
The court in Rice further points out that the Vehicle and Traffic Law was recodified in 1957, incorporating the Uniform Vehicle Code, adding a new provision, Vehicle and Traffic Law § 1163 (a), providing:
*302 “No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway, as required in section eleven hundred sixty, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety. No person shall so turn any vehicle without giving appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement.”
This new statute, for the first time, made reference to “move right or left upon a roadway” (a lane change) and limited the mandatory use for signaling turns to circumstances where “other traffic may be affected by such movement.” At that time, there was no subdivision (d).
In 1964 Vehicle and Traffic Law § 1163 was again amended, making two significant changes. The first restored the per se requirement that drivers always signal their intention to turn by removing the phrase “in the event any other traffic may be affected by such movement” from subdivision (a). As explained by Arnold W Wise, Counsel to William S. Hults, then Commissioner of Motor Vehicles, in his letter to Governor Rockefeller, endorsing the bill, this change was brought about due to the belief that “[t]his rule was impractical because it was sometimes difficult for a motorist to determine whether other traffic, including pedestrians, could be affected by his signals.” (Bill Jacket, L 1964, ch 653, at 6.) The second was the addition of subdivision (d).
In arguing that this subdivision does not mandate the use of a signal to change lanes, the defendant focuses on the latter half of the subdivision, which proscribes the use of signaling devices to indicate a parked or disabled vehicle or to flash as a courtesy or “do pass” signal to other vehicles, as the Legislature’s true intended purpose in enacting same. In support thereof, the defendant points to selected language found in the statute’s Bill Jacket (L 1964, ch 653, at 6), indicating that “[t]his practice, although quite prevalent, is dangerous [and is to be replaced by] ... a device which will permit the simultaneous flashing of all four directional signals. This is the recommended and highly desirable practice in the case of a parked or disabled vehicle.”
The problem with the defendant’s analysis of the statute and its legislative history is that it is selective and incomplete. It is *303 the opinion of this court that the reading the defendant would like to give the statute is not only contrary to the plain meaning of its terms, but is directly contradicted by a complete reading of the legislative history.
It is a well established principle of statutory construction that “the purpose of the statute and the objectives sought to be accomplished by the Legislature must be borne in mind.” (Abood v Hospital Ambulance Serv., 30 NY2d 295, 298 [1972]; see also People v Litto, 33 AD3d 625 [2d Dept 2006]; Metropolitan Life Ins. Co. v Durkin, 276 App Div 394 [1st Dept 1950], affd 301 NY 376 [1950]; Association of Surrogates & Supreme Ct. Reporters within City of NY. v State of New York, 78 NY2d 143 [1991].) In so doing, where “statutory language is unambiguous, a court will ordinarily give effect to the plain meaning of the words and apply the statute according to its express terms.” (Matter of Tucker v Board of Educ., Community School Dist. No. 10, 82 NY2d 274, 278 [1993] [citations omitted]; see also Carey v Cuomo, 209 AD2d 570 [2d Dept 1994].)
As indicated, Vehicle and Traffic Law § 1163 (d) unequivocally states, “The signals provided for in section eleven hundred sixty-four[*] shall be used to indicate an intention to turn, change lanes, or start from a parked position . . . .” While the Legislature’s use of the mandatory term “shall” “is not conclusive, such a word of command is ordinarily construed as peremptory in the absence of circumstances suggesting a contrary legislative intent.” (People v Schonfeld, 74 NY2d 324, 328 [1989] [citations omitted]; see also Matter of Janus Petroleum v New York State Tax Appeals Trib., 180 AD2d 53 [3d Dept 1992]; Murphy Constr. Corp. v Morrissey, 168 AD2d 877 [3d Dept 1990].) That “the Legislature chose the peremptory word ‘shall’, rather than the permissive ‘may’, . . . strongly evidenced its intent that the provisions of the amended statute are mandatory in nature.” (Matter of Podolsky v Narnoc Corp., 196 AD2d 593, 594-595 [1993] [citations omitted].)
Contrary to the defendant’s argument, the inclusion of this provision does not render Vehicle and Traffic Law § 1163 (b) and (c) superfluous, as it is “practicable to give each a distinct and consistent meaning.” (Matter of Swierupski v Korn, 69 AD2d 632, 637 [2d Dept 1979] [citations omitted].) In fact, these subdivisions are neither duplicative of, nor in conflict with, each *304 other. As the defendant correctly points out, subdivision (b) helps describe the manner in which turn signals will be given and subdivision (c) mandates that signals shall be given for stops and sudden decreases in speed. When section 1163 is read as a whole, with regard to turns, consistent with the preceding subdivisions, subdivision (d) further describes the manner in which a signal must be given when turning, mandating the use of “the signals provided for in section eleven hundred sixty-four.” This in no way negates the mandatory provision of subdivision (d) regarding the need to use signals when changing lanes.
As the above history of Vehicle and Traffic Law § 1163 details, prior to 1964, subdivision (d) did not exist, and there was no statutory requirement that signals be given by a motorist changing lanes. The court finds the simultaneous restoration of the per se rule for signaling turns and the inclusion of subdivision (d) in the 1964 amendment to be significant. It would simply be illogical for the Legislature to mandate the use of signals every time a driver intends to turn, as opposed to only those times when “other traffic may be affected by such movement,” because it is “difficult for a motorist to determine whether other traffic, including pedestrians, could be affected by his signals” (Bill Jacket, L 1964, ch 653, at 6), yet leave motorists to their own discretion, as the defendant suggests, to determine if a lane change can be made with reasonable safety without signaling.
If, as the defendant suggests, subdivision (d) is nothing more than an example of one of the ways a person may “move right or left upon a roadway . . . with reasonable safety,” avoiding a violation of Vehicle and Traffic Law § 1163 (a) and § 1128 (a), this subdivision would serve no true purpose. Notably, no such provision even appears in Vehicle and Traffic Law § 1128 (a), which provides, “A vehicle . . . shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.” Just as the Legislature saw fit to remove the discretion of motorists “to determine whether other traffic, including pedestrians, could be affected by his signals” in making turns in a reasonably safe manner, so too must it have intended to remove that discretion for other “movements” upon the roadway, including lane changes. To read this provision of subdivision (d) in any other manner would render it meaningless, in violation of well established principles of statutory construction. (Matter of Albano v Kirby, 36 NY2d 526 *305 [1975]; Rocovich v Consolidated Edison Co., 78 NY2d 509 [1991].)
If there remains any doubt as to the Legislature’s intention in including subdivision (d) to mandate the use of signaling devices upon changing lanes, one need only look at the unequivocal legislative intent at the time of its enactment. (People v Varughese, 21 AD3d 1126 [2d Dept 2005]; Fumarelli v Marsam Dev., 92 NY2d 298 [1998]; Matter of Tompkins County Support Collection Unit v Chamberlin, 99 NY2d 328 [2003].)
In this regard, the defendant has overlooked the following unequivocal statements made at the time of passage of Vehicle and Traffic Law § 1163 (d):
“The amendments also provide for reference to lane direction control signals, a relatively new development since the Code was last amended . . .
“The bill also removes the provision which presently states that directional signals need be used only when other traffic can be affected. . . . The amended statute places the absolute duty upon the person to use the signals when preparing to make a turn or when making one of the other movements covered by this statute.” (Bill Jacket, L 1964, ch 653, at 6 [emphasis added].)
With even the defendant conceding that one of the other “movements” covered by this statute is a “move right or left upon a roadway” (Vehicle and Traffic Law § 1163 [a]), it is the opinion of this court that Vehicle and Traffic Law § 1163 (d) mandates the use of a signal when changing lanes, at all times, the violation of which will provide the police with an appropriate basis to stop said vehicle. (People v Bishop, 199 AD2d 518 [2d Dept 1993]; United States v Scopo, 19 F3d 777 [2d Cir 1994]; United States v Dhinsa, 171 F3d 721 [2d Cir 1998].)
This court finds that the statement attributed to the defendant by Trooper DeCocco was voluntarily made in response to reasonable inquiry pursuant to a routine traffic stop. (Berkemer v McCarty, 468 US 420 [1984]; People v Mathis, 136 AD2d 746 [1988]; People v McGreal, 190 AD2d 869 [2d Dept 1993]; People v Brown, 104 AD2d 696 [3d Dept 1984]; People v Fiorello, 140 AD2d 708 [2d Dept 1988].)
Accordingly, the statement in question is admissible on the People’s direct case at the time of trial.

* Vehicle and Traffic Law § 1164 provides for the use of either “hand and arm” signals or “signal lamps.”