OPINION OF THE COURT
Ciparick, J.
This appeal requires us to interpret section 413-a of the Family Court Act to determine the proper scope of the Family Court’s review of an objection to a cost of living adjustment (COLA) to a child support order. We conclude that the statute authorizes the Family Court to review and adjust the underlying support order in accordance with the standards set forth in section 413 of the Family Court Act,[1] not merely to decide whether or not the COLA amount should be applied.
Linda and Boyd Chamberlin were married in August 1972 and have two sons, born in 1977 and 1983. Linda retained custody of the children following the Chamberlins’ May 1985 divorce. Boyd was ordered to pay child support in the amount of $70 per week until the children reached 21 or were otherwise emancipated. In May 1991, the parties entered into a stipulation modifying the divorce decree by increasing the weekly child support to $100. In 1997, after the older child’s emancipation, Boyd’s support obligation was reduced to $57 per week in accordance with the stipulation. The parties were receiving support enforcement services through the local support collection unit.
In June 1999, the Tompkins County Support Collection Unit (SCU), on behalf of Linda Chamberlin, filed an adjusted order of support with Family Court that incorporated a seven dollar COLA, increasing Boyd’s support obligation to $64 per week. Pursuant to its authority under Family Court Act § 413-a (3) (a), SCU simultaneously filed an objection to the adjusted *332 order. In response, Boyd Chamberlin filed a motion for summary judgment to dismiss the objection to the COLA. The primary question raised by the motion was whether a party could request modification of the support order in excess of the COLA through the section 413-a objection process. The Hearing Examiner denied the motion, finding that the statute provided for a de novo review of the support order. Boyd Chamberlin then filed written objections with the Family Court, which were denied as premature. The matter proceeded to a fact-finding hearing, where the Hearing Examiner applied the child support guidelines set forth in Family Court Act § 413 and determined that Boyd Chamberlin’s child support obligation was $149.62 per week. Chamberlin again filed objections to the Hearing Examiner’s decision with the Family Court, claiming a due process violation based on inadequate notice and lack of opportunity to be heard.
Family Court concluded that the COLA objection process provided the parties with adequate notice and opportunity to be heard; that the decision to conduct a de novo review of the support order was correct; and that application of the Child Support Standards Act (CSSA) guidelines “was rationally related to the valid objective of ensuring adequate child support” (185 Mise 2d 470, 475 [2000]). The Appellate Division modified by reversing the portion of the order that increased Boyd Chamberlin’s support obligation to $149.62 and remitted the matter to Family Court for further proceedings. The Court held that the review of a COLA objection should result only in a determination of whether or not the statutory COLA should be applied, not a de novo hearing, and that “the CSSA comes into play only as a means of determining the appropriateness of the proposed COLA.” (287 AD2d 138, 142.) In addition, the Appellate Division concluded that the objection process is not a means to obtain modification of a support order that a party otherwise would not be entitled to receive (287 AD2d 138). On remittal, Family Court found that the proposed COLA increasing the order to $64 per week was appropriate. We granted SCU leave to appeal and now reverse.
The Federal Statute
Although this appeal requires us to determine the appropriate scope of review under Family Court Act § 413-a, we begin our analysis with the federal framework that underlies the state statute. As a condition to receiving federal funding, states are required to maintain uniform standards for determining *333 child support obligations and establish support enforcement programs (see 42 USC §§ 651-669b; Matter of Dutchess County Dept. of Social Servs. v Day, 96 NY2d 149, 152 [2001], citing 42 USC §§ 651-669). New York enacted section 413 of the Family Court Act (the CSSA) to meet those requirements.
In 1996, the federal government expanded the framework for states to adopt, requiring periodic review and adjustment of child support orders but giving states some flexibility in the mechanics of the process. These amendments, contained in the Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA), are the basis for section 413-a (see 42 USC § 666; Pub L 104-193).
As amended, the federal statute requires states to establish a procedure for review and adjustment of child support orders subject to enforcement by the support collection unit at least every three years upon the request of either parent or the appropriate state agency (see 42 USC § 666 [a] [10] [A] [i]). The statute allows the state to choose from among three options: (1) review and adjustment of the order in accordance with the state child support guidelines if the amount in the existing order “differs from the amount that would be awarded in accordance with the guidelines,” (2) application of a cost of living adjustment to the existing order, or (3) use of automated methods to identify orders eligible for review and application of the appropriate adjustment. If the state chooses the second or third option, the state must establish “procedures which permit either party to contest the adjustment * * * by making a request for review and, if appropriate, adjustment of the order in accordance with the child support guidelines established pursuant to section 667 (a) of this title”[2] (42 USC § 666 [a] [10] [A] [ii]). The statute further provides that it is not necessary for the parties to prove a change in circumstances to receive the adjustment (see 42 USC § 666 [a] [10] [A] [iii]).
The legislative history of this statute is instructive regarding the^ intended scope of review when a party objects to a COLA or other automated adjustment. Mandatory periodic review *334 and adjustment of child support orders was originally implemented through the Family Support Act of 1988 (Pub L 100-485). As the Office of Child Support Enforcement (OCSE) later explained, those requirements were enacted to ensure the adequacy of child support orders (see 57 Fed Reg 61559, 61560 [1992]). There was concern that support orders entered into prior to the establishment of state guidelines were inadequate, and also that orders in compliance at the start would not necessarily continue to provide the guideline amount of support over time (see 57 Fed Reg 61559, 61560 [1992]). The OCSE explained that, for those reasons, periodic adjustments to the order would be made “in accordance with the State’s guidelines, which must be used as a rebuttable presumption in establishing or adjusting support obligations in the State” (57 Fed Reg 61559, 61560 [1992]).
The PRWORA, the source of the current 42 USC § 666 (a) (10) review and adjustment procedures, instituted review upon request rather than mandatory review and allowed states to choose among three methods for review (see 64 Fed Reg 6237, 6241 [1999]). There is no indication that the federal government, by enacting those new procedures, intended to restrict a party’s ability to obtain review and adjustment. To the contrary, regardless of which method is adopted, each state ultimately must afford a requesting party the opportunity to seek adjustment of the child support order in accordance with the guidelines.
The New York Statute
In response to the federal legislation, New York has elected to provide a cost of living adjustment with an accompanying right to review by a court — the second option offered by the federal statute. Family Court Act § 413-a states that SCU may review an order of support to determine whether a COLA should be applied at the request of a party to a child support order receiving support enforcement services or a party to an order issued on behalf of a child receiving public assistance, provided that the review occurs at least two years after the order is issued or last modified or adjusted (see Family Ct Act § 413-a [1], [5] [a] [1]). SCU will adjust a support order to include a COLA “if the sum of the annual average changes of the consumer price index for all urban consumers (CPI-U) * * * is ten percent or greater” (Family Ct Act § 413-a [2] [a]). SCU issues an adjusted support order reflecting the COLA, calculated pursuant to the statutory formula, which remains the *335 new order if no party objects (see Family Ct Act § 413-a [2] [b]; [3] [e]).
Either party or SCU may challenge the proposed COLA by submitting a written objection (see Family Ct Act § 413-a [3] [a]). Filing of the objection precludes the COLA from taking effect and prompts a hearing, which results either in a new order of support or an order of no adjustment (see Family Ct Act § 413-a [3] [b]). Under the statute, the court may issue an adjusted order without a showing of proof of a change in circumstances (see Family Ct Act § 413-a [3] [c]). However, nothing in the statute “shall be deemed in any way to limit, restrict, expand or impair the rights of any party to file for a modification of a child support order as is otherwise provided by law” (Family Ct Act § 413-a [4]).
The parties disagree as to the scope of the court’s authority under section 413-a (3) (b) (1) to issue “a new order of support in accordance with the child support standards” upon the filing of an objection. SCU argues that the statute authorizes the court to make an adjustment based on the guidelines, whereas Boyd Chamberlin argues that application of the standards would constitute a de facto modification of the order without a change in circumstances.
To interpret a statute, we first look to its plain language, as that represents the most compelling evidence of the Legislature’s intent. However, “the legislative history of an enactment may also be relevant and ‘is not to be ignored, even if words be clear’ ” (see Riley v County of Broome, 95 NY2d 455, 463 [2000], quoting McKinney’s Cons Laws of NY, Book 1, Statutes § 124, at 252). The primary goal of the court in interpreting a statute is to determine and implement the Legislature’s intent.
Under the plain language of the statute, when a hearing is held pursuant to a COLA objection, the court is to review the order to determine whether an adjustment is warranted based on the guidelines, not merely whether the COLA should be applied. The statute directs the court to issue either “a new order of support in accordance with the child support standards” (Family Ct Act § 413-a [3] [b] [1]) or, “where application of the child support standards * * * results in a determination that no adjustment is appropriate,” to enter an order of no adjustment (see Family Ct Act § 413-a [3] [b] [2]). An order “in accordance with the child support standards” should be exactly that — an order that comports with the guidelines as set forth in section 413.
*336 The legislative history of the state statute similarly supports this interpretation. The statute was intended to “strengthen and enhance the tools available for * * * the establishment, enforcement, and collection of child support orders and [to] bring the state into compliance with the child support provisions of the * * * (PRWORA)” — a clear incorporation of that statute and its goal of ensuring adequate child support (Governor’s Program Mem, L 1997, ch 398, 1997 NY Legis Ann, at 264). The Legislature envisioned that the use of a COLA mechanism would facilitate review and adjustment of support orders by applying a COLA (see id.). However, the Program Memorandum also provides that “[e]very child is entitled to have both parents contribute to financial and medical support in accordance with uniform guidelines. Order amounts should be updated and the enforcement of child support orders should ensure regular compliance” (Governor’s Program Mem, L 1997, ch 398, 1997 NY Legis Ann, at 265).
Boyd Chamberlin places great emphasis on the portion of the statute that states this section does not “limit, restrict, expand or impair” the parties’ rights to modification of the order (see Family Ct Act § 413-a [4]), and argues that allowing de novo review of the underlying support order effectively expands the right to modification. However, the right to review and adjustment is separate and distinct from the right to seek modification of the support order. The COLA and its review procedures, which are not contingent on a change in circumstances, are triggered only when there is at least a 10% change in the CPI-U (see Family Ct Act § 413-a [2] [a]; [3] [c]). By contrast, parties may seek a modification at any time based upon an unforeseen change in circumstances (see Matter of Boden v Boden, 42 NY2d 210, 213 [1977]) or the child’s right to receive adequate support (see Matter of Brescia v Fitts, 56 NY2d 132, 139-140 [1982]; see also Domestic Relations Law § 236 [B] [9] [b]). Family Court Act § 413 (3) (a) also authorizes a onetime review of pre-1989 support orders “as calculated pursuant to the provisions of [the CSSA]” (Family Ct Act § 413 [3] [a]).
We recognize that parties to support agreements that consciously deviate from the CSSA guidelines are concerned that the statutory review and adjustment procedures not eviscerate the purpose of those agreements, including the desire for certainty over time. While the review and adjustment procedures apply equally to orders based on an agreement and those based solely on the child support standards, parties to an agreement that deviated from the guidelines may *337 demonstrate why, in light of the agreement, it would be unjust or inappropriate to apply the guideline amounts. Section 413 (1) (h) of the Family Court Act allows parties to enter into a support agreement that does not adhere to the CSSA (see also Matter of Gravlin v Ruppert, 98 NY2d 1 [2002]). The statute also now indicates that the agreement must reflect that the parties were advised of the CSSA and that the amount of support calculated using its provisions is presumptively correct (see Family Ct Act § 413 [1] [h]).[3] In addition, if the amount of support in the agreement differs from the amount that would be awarded under the CSSA, the agreement must state that amount and the reasons for the deviation (see id.). The review and adjustment procedures specifically contemplate that a court reviewing an objection may consider the provisions of an existing agreement or stipulation in determining whether the amount calculated under the standards would be unjust or inappropriate (Family Ct Act § 413 [1] [Z]). Parties are encouraged to advance such arguments to the court during the objection process.
Here, we conclude that in reviewing SCU’s objection to the proposed COLA under the statutory procedure, Family Court did not err in entering an order in accordance with the CSSA guidelines rather than merely determining whether or not the COLA amount should be applied.
Constitutional Claims
Boyd Chamberlin also argues that the interpretation of the statute we now adopt is in violation of the Contract Clause of the Federal Constitution (see US Const, art I, § 10 [1]). This argument lacks merit, because we perceive no impediment to the parties’ right to contract. Even a substantial impairment of the right to contract would, moreover, not be unconstitutional if the State can demonstrate that “ ‘it is reasonable and necessary to serve an important public purpose’ ” (19th St. Assoc. v State of New York, 79 NY2d 434, 443 [1992], quoting United States Trust Co. of N.Y. v New Jersey, 431 US 1, 25 [1977]). Here, ensuring that children receive adequate support is an important public purpose, and review of support orders is a reasonable and necessary means of accomplishing that goal.
*338 Finally, Boyd argues that his due process rights were violated because the pleadings did not give adequate notice of what was being sought through SCU’s objections. This argument also lacks merit because the statute itself notifies the parties that there will be a hearing in the event of an objection, what will be reviewed at the hearing and the possible outcomes (see Family Ct Act § 413-a [3] [a], [b]). In addition, in contrast to section 413 (3) (b), section 413-a does not require “specific written objections.” We conclude that the objection process satisfies due process requirements.
In light of our holding, we remit this case to the Appellate Division for consideration of other issues raised but not addressed by that Court.
Accordingly, the judgment appealed from and the order of the Appellate Division brought up for review should be reversed, with costs, and the matter remitted to that Court for further proceedings in accordance with this opinion.
Chief Judge Kaye and Judges Smith, Wesley, Rosenblatt, Graffeo and Read concur.
Judgment appealed from and order of the Appellate Division brought up for review reversed, etc.

. Family Court Act § 413 is also codified at Domestic Relations Law § 240, and Family Court Act § 413-a at Domestic Relations Law § 240-c.

. Section 667 (a) provides:
“Each State, as a condition for having its State plan approved under this part, must establish guidelines for child support award amounts within the State. The guidelines may be established by law or by judicial or administrative action, and shall be reviewed at least once every 4 years to ensure that their application results in the determination of appropriate child support award amounts” (42 USC § 667 [a]).

. We note, however, that at the time the parties entered into the 1991 stipulation in this matter, it was only necessary that the agreement reflect that the parties had been advised of the CSSA (see Child Support Standards Act, L 1989, ch 567, § 8).