

NUMBER 13-09-00398-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

## IN THE INTEREST OF H.C.W., A CHILD

### On appeal from the 317th District Court
### of Jefferson County, Texas.

# MEMORANDUM OPINION

### Before Justices Yañez, Rodriguez, and Garza
### Memorandum Opinion by Justice Garza

This is an appeal of an order modifying a parent-child relationship. Appellant, C.H.W., the mother of H.C.W., a minor child, argues by nine issues that various provisions regarding child support in the trial court's order were erroneous. We affirm.

### I. BACKGROUND

C.H.W. and C.B.W. are the biological parents of H.C.W., who was born in 1994. In 1997, C.H.W. and C.B.W. were divorced. The final divorce decree, entered on July 18, 1997, granted C.H.W. sole managing conservatorship of H.C.W. and required C.B.W. to pay $470 per month in child support and to provide health insurance coverage for H.C.W.

On November 17, 2005, C.H.W. filed a motion for enforcement with the trial court, alleging that C.B.W. had obtained new employment and was therefore responsible for paying an increased amount of child support. According to the motion for enforcement, the parties had previously agreed to an order reducing the amount of child support due from

C.B.W. as a "temporary emergency provision resulting from economic set[]backs incurred by [C.B.W.]." According to C.H.W., the agreed order, dated February 4, 2005, provided that the "temporary" reduction in C.B.W.'s child support obligations "shall immediately terminate upon [C.B.W.] obtaining employment on a regular basis" and that both parties "agreed to promptly enter another order as soon as [C.B.W.] obtains . . . employment."[1] In her November 17, 2005 motion for enforcement, C.H.W. alleged that C.B.W. "has continued to pay the reduced amount of child support to date, from the date of his gainful employment, . . . has refused to provide evidence of his income," and "has refused to promptly enter into another order with [C.H.W.] with regard to child support."[2] Accordingly, C.H.W. requested, among other things, that C.B.W. be held in contempt and be ordered to pay the amount of child support past due as well as an increased monthly amount to be applied retroactively.

According to C.H.W., C.B.W. subsequently filed a "Motion for Enforcement of Possession or Access" alleging that C.H.W. had violated the terms of the final divorce decree by denying C.B.W.'s access to H.C.W. during one of his scheduled visitation periods.[3] After a hearing on December 5, 2006, the trial court granted C.B.W.'s motion and rendered an order on April 24, 2007 adjudging C.H.W. guilty of contempt for denying C.B.W.'s access to H.C.W. The trial court ordered that C.H.W. (1) be confined in the Jefferson County Jail for a period not to exceed twenty-four hours, and (2) pay $1,500 in attorney's fees to C.B.W.[4]

Also on April 24, 2007, the trial court granted a motion filed by C.B.W. to continue

---

[1] The February 4, 2005 agreed order does not appear in the appellate record.

[2] C.H.W.'s November 17, 2005 motion also alleged that C.B.W. had violated the terms of the February 4, 2005 agreed order by: (1) refusing to provide the name, address, or phone number of his new employer to C.H.W.; (2) refusing to provide his home address or phone number to C.H.W.; (3) failing to maintain health insurance "at all times" for H.C.W.; and (4) enrolling H.C.W. in a health insurance plan "which limits and excludes coverage for asthma, a medical condition suffered by [H.C.W.]."

[3] C.B.W.'s "Motion for Enforcement of Possession or Access" does not appear in the appellate record.

[4] It is not clear whether C.H.W. actually served time in jail as a result of the trial court's April 24, 2007 order. It is undisputed, however, that C.H.W. did not pay the $1,500 in attorney's fees as required by that order.

a hearing on C.H.W.'s November 17, 2005 motion for enforcement. Because of multiple such continuances over the course of three years, almost all of which were requested by C.B.W.'s attorneys, no hearing was held on the issues raised in C.H.W.'s motion for enforcement until April 20, 2009.

At the April 20, 2009 hearing, C.H.W. testified that she had been receiving $710 in monthly child support until C.B.W. lost his job on February 5, 2005, at which point the support payments decreased to $250 per month. She further stated that C.B.W. moved from the Beaumont, Texas, area to Round Rock, Texas, in 2006 or 2007 and has not consistently exercised his right to visitation with H.C.W. since that time. C.H.W. testified that C.B.W. had enrolled H.C.W. in a Scott & White Hospital health insurance policy, but that, because there are no Scott & White hospitals near Beaumont, the insurance policy is "useless." She stated that she could add H.C.W. to the health insurance plan she obtains through her employer, and that such coverage would cost her an additional $150 per pay period.

On cross-examination, C.H.W. admitted that she had not paid the $1,500 in attorney's fees as required by the trial court's April 24, 2007 order because "I have been advised by my attorney not to." C.H.W. elaborated: "[C.B.W.] owes me $27,000 in back child support. Why am I going to pay this man $1,500? I'm doing good to make ends meet right now." On re-direct examination, C.H.W. stated that the reason she has not made the $1,500 payment to C.B.W. is that she is having "problems with money" in part because she is required to travel to Round Rock to drop off H.C.W. for her visits with C.B.W.

C.B.W. testified that he began work at his current job as a systems analyst with the Texas Department of Transportation on April 4, 2005. He stated that he was paying $500 per month in child support until October 2006, at which point he began to pay $250 per month instead, on the advice of his attorney. C.B.W. stated that he received a pay raise in December 2008 and that he currently makes approximately $62,000 annually. When asked about his income for previous years, C.B.W. estimated that he earned $43,000 in 2005, $48,000 in 2006, $51,000 in 2007, and $55,000 in 2008. He further testified that he

3

has health insurance coverage through his employer and that H.C.W. is enrolled in that plan. C.B.W.'s pay stub dated March 31, 2009 was entered into evidence.

After the hearing, the trial court ruled: (1) that visitation arrangements would be altered to reflect the fact that C.B.W. resides more than 100 miles from H.C.W.'s residence, *see* TEX. FAM. CODE ANN. § 153.313 (Vernon Supp. 2009) (providing standard visitation terms where a possessory conservator resides more than 100 miles from the residence of the child); and (2) C.B.W. would be responsible for all travel necessary to pick up and drop off H.C.W. The trial court further ordered that C.H.W. place H.C.W. on her health insurance plan, and that C.B.W. "pay [C.H.W. $]164 a month to put your daughter on that insurance." As to child support, the trial court ruled as follows:

> Child support is set at $782 per month. I'm going to retro that to January 1, 2009, which means that he would have paid through, as of April, $3,128. I'm giving him the credit for $1,000 of child support that he either has paid or should have paid. And I'm also setting off the attorney fees that she owes him of $1,500, which gives him a credit of $2,500. If you subtract that, its $628 that he has to make up. And he'll make that up in payments of $50 as additional child support each time.

A written judgment was entered on May 27, 2009, memorializing the trial court's rulings and additionally appointing C.H.W. and C.B.W. as joint managing conservators of H.C.W. This appeal followed.[5]

## II. DISCUSSION

### A. Calculation of Child Support Amount

By her first three issues, C.H.W. argues that the trial court erred in calculating the monthly amount of child support due from C.B.W. Specifically, she argues that the trial court abused its discretion by: (1) not including the cost of H.C.W.'s health insurance in its calculation of C.B.W.'s net resources; (2) including the cost of H.C.W.'s health insurance as a part of, rather than in addition to, the monthly amount of child support due from C.B.W.; and (3) using H.B.W.'s "stated income" rather than his "attested income" in

---

[5] The instant appeal was transferred to this Court from the Ninth Court of Appeals under an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (Vernon 2005).

We note that C.B.W. has not filed an appellee's brief to assist us in the resolution of this matter.

4

calculating the parties' net resources.

We review a trial court's order regarding child support for abuse of discretion. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990); *Office of the Att'y Gen. v. Buhrle*, 210 S.W.3d 714, 717 (Tex. App.–Corpus Christi 2006, pet. denied). The order will not be overturned unless the trial court acted arbitrarily or unreasonably, acted without reference to any guiding rules or principles, or failed to analyze or apply the law correctly. *Buhrle*, 210 S.W.3d at 717.

Monthly child support obligations are calculated based on the obligor's net available resources. *See* TEX. FAM. CODE ANN. § 154.061 (Vernon 2008); *Wilemon v. Wilemon*, 930 S.W.2d 290, 293 (Tex. App.–Waco 1996, no writ). In calculating net available resources, the trial court must deduct from the obligor's net resources, among other things, federal income taxes, social security taxes, and costs of the child's health insurance. *See* TEX. FAM. CODE ANN. § 154.062(d)(1), (d)(2), (d)(5) (Vernon Supp. 2009).

By her first issue, C.H.W. argues that the trial court erred by incorrectly deducting the amount C.B.W. had been paying for H.C.W.'s health insurance coverage. We disagree. In calculating C.B.W.'s net monthly resources, the trial court is required to deduct the monthly cost to C.B.W. of the court-ordered health insurance covering H.C.W. *See id.* § 154.062(d)(5). In the instant case, the trial court ordered C.B.W. to pay $164 per month for H.C.W.'s health insurance coverage. Subtracting that amount from C.B.W.'s net monthly income[6] results in a total of $3,884.37 in net monthly resources available to C.B.W.

Under the guidelines set forth in section 154.125 of the family code, C.B.W.'s monthly child support obligation with respect to H.C.W. is twenty percent of his monthly net resources. *See id.* § 154.125(b) (Vernon Supp. 2009). Therefore, according to the

---

[6] No evidence was adduced indicating that C.B.W. had any source of income other than his salary. According to his March 31, 2009 pay stub, C.B.W.'s gross monthly salary is $5,214.58. According to tax tables promulgated by the Office of the Attorney General pursuant to the family code, C.B.W.'s net monthly income is therefore $4,048.37. TEX. FAM. CODE ANN. § 154.061 (Vernon 2008); Office of the Attorney General, 2009 Tax Charts (Vernon Supp. 2009), *available at* http://www.oag.state.tx.us/cs/taxcharts/2009taxchart.pdf (last visited May 3, 2010).

5

guidelines, C.B.W.'s monthly child support responsibility is twenty percent of $3,884.37, or $776.87. The trial court's award of $782 per month differs from this amount by only seven-tenths of one percent; we do not consider this slight discrepancy as amounting to an abuse of discretion. C.H.W.'s first issue is overruled.

By her second issue, C.H.W. claims that the trial court erred "by not calculating health coverage child support as being in addition to, rather than a part of, the guidelines-determined child support amount." C.H.W. states that the $782 monthly amount ordered by the trial court is "inclusive of the $164" that the trial court separately ordered C.B.W. to pay for H.C.W.'s health insurance. The record reflects, however, that the trial court in fact ordered C.B.W. to pay the $164 for H.C.W.'s health insurance directly to C.H.W. *in addition to* the $782 in monthly child support ordered pursuant to the guidelines, as required by law.[7] *See id.* § 154.182(b-1) (Vernon Supp. 2009) ("If the parent ordered to provide health insurance . . . is the obligee, the court shall order the obligor to pay the obligee, as additional child support, an amount equal to the actual cost of health insurance for the child, but not to exceed a reasonable cost to the obligor."); *Kish v. Kole*, 874 S.W.2d 835, 837 (Tex. App.–Beaumont 1994, no writ); *Thompson v. Thompson*, 827 S.W.2d 563 (Tex. App.–Corpus Christi 1992, writ denied). C.H.W.'s second issue is overruled.

By her third issue, C.H.W. claims that the trial court erred "by using [C.B.W.]'s exhibit's stated income, rather than his attested income of $62,000/year, to calculate net resources and support for H.C.W." C.H.W. appears to believe that the trial court's order of child support is based on some amount of net monthly resources less than what was

---

[7] The trial court's May 27, 2009 written order provides, in pertinent part, as follows:

IT IS ORDERED that [C.B.W.] is obligated to pay and shall pay to [C.H.W.] child support of $782.00 per month, with the first payment being due and payable on May 1, 2009 and a like payment being due and payable on the 1st day of each month thereafter . . .

. . . .

Pursuant to section 154.182 of the Texas Family Code, [C.B.W.] is ORDERED to pay [C.H.W.] cash medical support for reimbursement of health insurance premiums, as additional child support, of $164.00 per month, with the first installment [sic] being due and payable on May 1, 2009, and a like installment [sic] being due and payable on or before the 1st day of each month until the termination of current child support for the child under this order.

6

suggested by C.B.W.'s testimony that he earns approximately $62,000 annually. However, C.B.W.'s March 31, 2009 pay stub reflected an annualized gross salary of $62,574.96, thereby corroborating his testimonial estimate. We conclude that the trial court's child support calculations are consistent with both C.B.W.'s testimony and his pay stub. C.H.W.'s third issue is therefore overruled.

## B.    Child Support Arrearages and Retroactive Child Support

By her fourth, fifth, sixth, and seventh issues, C.H.W. argues that the trial court erred in its calculation of child support arrearages and retroactive child support due from C.B.W. Specifically, C.H.W. argues that the trial court erred: (1) "by not awarding accrued arrearages until the begin[ning] date of retroactive support, or alternatively, awarding fuller retroactive support"; (2) by awarding retroactive support only to January 1, 2009, "thus violating preemptive federal law"; (3) "by not awarding retroactive child support back to at least the third anniversary of the 2005 agreed order"[8]; and (4) by "fail[ing] to adjudicate arrearages under the motion to enforce . . . in spite of unrebutted evidence on arrearage obligations arising by virtue of the parties' stipulation contained in the February 4, 2005 order."

We conclude that C.H.W. has failed to properly preserve these issues for our review. On appeal, C.H.W. contends that she preserved the issues by filing a document entitled "Objection" with the trial court on May 26, 2009. The "Objection" document raised substantially the same issues as those presented on appeal with respect to child support arrearages and retroactive child support. However, the record does not reflect that the trial court "ruled on the . . . objection . . . either expressly or implicitly," nor does the record reflect that the trial court "refused to rule on" the objection, as is required for preservation

---

[8] By these issues, C.H.W. argues specifically that the trial court's judgment violated certain provisions of the federal Personal Responsibility and Work Opportunity Reconciliation Act of 1996, which establishes standards that states must meet in order to receive federal matching funds for child support enforcement. *See* 42 U.S.C. § 666 (2009). The statute, in part, "requires states to establish a procedure for review and adjustment of child support orders . . . at least every three years upon the request of either parent or the appropriate state agency." *Tompkins County Support Collection Unit ex rel. Chamberlin v. Chamberlin*, 99 N.Y.2d 328, 333 (2003) (construing 42 U.S.C. § 666(a)(10)). Because C.H.W. did not preserve these issues for review, as noted herein, we do not address them. *See* TEX. R. APP. P. 33.1(a)(2).

of appellate complaints by Texas Rule of Appellate Procedure 33.1.  *See* TEX. R. APP. P. 33.1(a)(2).[9]

Accordingly, C.H.W.'s fourth, fifth, sixth, and seventh issues are overruled.

## C.  Offset of Attorney's Fees Against Child Support Award

By her final two issues, C.H.W. contends that the trial court committed reversible error by offsetting the retroactive child support award by the $1,500 in attorney's fees that she owed to C.B.W. pursuant to the trial court's April 24, 2007 order.  C.H.W. contends that the offset was an abuse of discretion because (1) "only H.C.W. has the exclusive right to the benefit of the accrued child support" and (2) H.C.W. "did not have her own representation" in the previous contempt proceedings.

In support of this argument, C.H.W. notes that provisions permitting the recovery of attorney's fees in child support enforcement actions under the family code only contemplate such fees being recovered by the child support obligee, not the obligor.  *See* TEX. FAM. CODE ANN. § 157.268 (Vernon Supp. 2009).  Citing the doctrine of *expressio unius est exclusio alterius*—the rule of construction providing that "the expression of one implies the exclusion of others," *see Mid-Century Ins. Co. v. Kidd*, 997 S.W.2d 265, 273 (Tex. 1999)—C.H.W. claims that attorney's fees owed by an obligee can therefore not be offset against child support owed by an obligor.  However, the trial court's award of attorney's fees to C.B.W. occurred in the context of C.B.W.'s enforcement action alleging that C.H.W. had denied C.B.W.'s access to H.C.W. during one of his scheduled visitation periods.  Having found C.B.W.'s allegations to be true, the trial court was not only permitted but was required by the family code to award reasonable attorney's fees and court costs to C.B.W.  *See* TEX. FAM. CODE ANN. § 157.167(b) (Vernon 2008) ("If the court

---

[9] Subsection (b) of Rule 33.1 provides that "[i]n a civil case, the overruling by operation of law of a motion for new trial or a motion to modify the judgment preserves for appellate review a complaint properly made in the motion . . . ." TEX. R. APP. P. 33.1(b).  Subsection (d) of that rule states that "[i]n a nonjury case, a complaint regarding the legal or factual sufficiency of the evidence . . . may be made for the first time on appeal in the complaining party's brief." TEX. R. APP. P. 33.1(d).  These rules are inapplicable here because (1) C.H.W.'s "Objection" was neither a motion for new trial nor a motion to modify the judgment, and (2) C.H.W. does not raise any appellate issues regarding the legal or factual insufficiency of the evidence.  *See* TEX. R. APP. P. 33.1(b), (d).

finds that the respondent has failed to comply with the terms of an order providing for the possession of or access to a child, the court *shall* order the respondent to pay the movant's reasonable attorney's fees and all court costs in addition to any other remedy." (Emphasis added)).

In any case, C.H.W. directs this Court to no case law or statute, and we find none, indicating that a child support arrearage may not be offset by an amount of attorney's fees owed by the child support obligee to the child support obligor. We therefore overrule C.H.W.'s eighth and ninth issues.

### III. CONCLUSION

The judgment of the trial court is affirmed.

 

 

 

_____
DORI CONTRERAS GARZA,
Justice

Delivered and filed the
6th day of May, 2010.

9