[54 NYS3d 821]

JACQUELINE ABATE, Individually and as Administratrix of the Estate of DONALD ABATE, Deceased, Respondent, v COUNTY OF ERIE et al., Appellants, et al., Defendant.

Fourth Department, June 30, 2017

**APPEARANCES OF COUNSEL**

*Michael A. Siragusa, County Attorney*, Buffalo (*Anthony B. Targia* of counsel), for defendants-appellants.

*Fitzgerald & Roller, P.C.*, Buffalo (*Derek J. Roller* of counsel), for plaintiff-respondent.

## OPINION OF THE COURT

NeMoyer, J.

We hold that County Law § 308 (4) poses no obstacle to the court-ordered discovery of 911 records in a civil lawsuit.

### Facts

An unusually intense winter storm stranded plaintiff's decedent inside his vehicle during the early morning hours of November 18, 2014, in the Town of Alden, Erie County. The decedent called 911 at 3:50 a.m. to report his predicament. The dispatcher instructed the decedent to remain in his vehicle,

and assured him that help would be forthcoming. Help did not arrive, however, until 1:37 a.m. on the following day (November 19, 2014). By that point, it was too late—the decedent had tragically died, still stranded inside his vehicle.

Plaintiff thereafter commenced this action against, inter alia, the County of Erie and the Erie County Sheriff's Office (collectively defendants). In her complaint, plaintiff alleged that the decedent's death resulted from defendants' negligent failure to rescue him during the storm. According to plaintiff, defendants breached a special duty to the decedent that attached as a result of his communications with defendants' 911 service.

In the course of discovery, plaintiff sought disclosure pursuant to CPLR article 31 of 911 records concerning the decedent and his plight on November 18-19, 2014. Plaintiff also sought disclosure of 911 records pertaining to other stranded persons at eight specified locations in the decedent's vicinity. Defendants voluntarily disclosed the decedent's 911 records, but they refused to disclose any 911 records pertaining to other stranded persons. Plaintiff moved to compel production. Defendants opposed the motion, arguing principally that the 911 records of nonparties were categorically exempt from disclosure by County Law § 308 (4). Supreme Court disagreed and granted plaintiff's motion to compel. Defendants now appeal, and we conclude that the order should be affirmed.

## Discussion

County Law § 308 (4) provides, in full:

> "Records, in whatever form they may be kept, of calls made to a municipality's E911 system shall not be made available to or obtained by any entity or person, other than that municipality's public safety agency, another government agency or body, or a private entity or a person providing medical, ambulance or other emergency services, and shall not be utilized for any commercial purpose other than the provision of emergency services."

Defendants say that this language is conclusive and absolute: 911 records "shall not" be disclosed to any person other than certain specific law enforcement and public safety entities not involved here. When the statute is divorced from its surrounding context, defendants' interpretation of section 308 (4) has some superficial allure. "Statutory phrases should not, however,

be read in isolation" (*Matter of Guido v New York State Teachers' Retirement Sys.*, 94 NY2d 64, 69 [1999]). As the Court of Appeals has often instructed, the "primary goal of the court in interpreting a statute is to determine and implement the Legislature's intent" (*Matter of Tompkins County Support Collection Unit v Chamberlin*, 99 NY2d 328, 335 [2003]; *see People v Litto*, 8 NY3d 692, 697 [2007]), and "[a]lthough the plain language of the statute provides the best evidence of legislative intent, the legislative history of an enactment may also be relevant and is not to be ignored, even if words be clear" (*Kimmel v State of New York*, 29 NY3d 386, 397 [2017] [internal quotation marks omitted]; *see Chamberlin*, 99 NY2d at 335; *Riley v County of Broome*, 95 NY2d 455, 463 [2000]). In that same vein, "inquiry must [also] be made of the spirit and purpose of the legislation, which requires examination of the statutory context of the provision" (*Matter of Sutka v Conners*, 73 NY2d 395, 403 [1989]; *see Guido*, 94 NY2d at 69). Put simply, the New York courts have a "long tradition of using all available interpretive tools to ascertain the meaning of a statute" (*Riley*, 95 NY2d at 464).

■ Here, the context and legislative history of section 308 (4) paint a different picture than defendants' decontextualized analysis suggests. Section 308 was enacted as part of article 6 of the County Law, which contains 59 discrete provisions related almost exclusively to the *financing* of a uniform, statewide telephonic emergency response system. The first of those 59 provisions, County Law § 300, sets forth the legislature's intent in enacting article 6:

> "The legislature . . . finds that a major obstacle to the establishment of an E911 system in the various counties within the state is the cost of the telecommunication equipment and services which are necessary to provide such system. . . .

> "[B]y the enactment of the provisions of this article, it is the intent of the legislature to fulfill its obligation to provide for the health, safety and welfare of the people of this state by providing counties with a *funding mechanism* to assist in the payment of the costs associated with establishing and maintaining an E911 system and thereby considerably increase the potential for providing all citizens of this state with the valuable services inherent in an E911 system" (emphasis added).

Notably, these findings do not reflect any legislative desire to preclude civil litigants from accessing 911 records under CPLR article 31. To the contrary, County Law § 300 reveals unmistakably that the legislature was motivated to adopt County Law article 6 in order to update the emergency response system across the state and to mitigate the financial burden of that endeavor for local governments. It is hardly surprising, then, that section 308 (4) lacks the hallmark language of other statutory provisions which specifically cut off a civil litigant's access to certain classes of evidentiary materials for reasons of public policy (*see e.g.* Civil Rights Law § 79-h [b], [c] [shielding journalists from contempt for withholding certain information in judicial proceedings, "(n)otwithstanding the provisions of any general or specific law to the contrary"]; Public Health Law § 2805-m [2] [barring article 31 discovery of certain information related to medical malpractice, "(n)otwithstanding any other provisions of law"]).

The relevant legislative history lends further support to our conclusion that the legislature did not enact section 308 (4) in order to exempt 911 records from the scope of discovery authorized by CPLR article 31. Specifically, the sponsoring memorandum for what would become County Law article 6 referenced only the budgetary implications of enhanced 911 services for local government (*see* Sponsor's Mem, Bill Jacket, L 1989, ch 756), and a later-introduced bill sought to repeal section 308 (4) on the ground that it unjustifiably shielded 911 records from requests under the Freedom of Information Law (FOIL) (*see* Sponsor's Mem, 2015 NY Senate Bill S1175). Tellingly, the sponsor of S1175 did not identify any need to repeal section 308 (4) in order to make 911 records discoverable under article 31, and for good reason—section 308 (4) had never exempted 911 records from such disclosure in the first place.

Nor can we ignore the implications of defendants' argument on established discovery practices in criminal matters. As the Second Department noted in *Anderson v State of New York* (134 AD3d 1061 [2015]), discovery of 911 records occurs with great regularity in criminal cases (*see id.* at 1063; *see e.g. People v Boyd*, 254 AD2d 740, 741 [1998], *lv denied* 92 NY2d 1047 [1999]), and defendants' preferred construction of section 308 (4) would, at the very minimum, call that longstanding and salutary practice into considerable question. We decline to construe section 308 (4) in a manner that could effectively eliminate a criminal defendant's access to potentially critical, and even exculpatory, evidentiary materials.

Finally, defendants' broad view of section 308 (4) would render superfluous the statute's own express prohibition on using 911 records "for any commercial purpose other than the provision of emergency services." After all, if 911 records were categorically exempt from disclosure in the first instance, then the legislature would not have needed to explicitly ban the commercial exploitation of such records. We decline to endorse such a cardinal sin of statutory construction (see generally Majewski v Broadalbin-Perth Cent. School Dist., 91 NY2d 577, 587 [1998]).

In light of the foregoing, we are persuaded that section 308 (4) operates not as a restriction on discovery pursuant to CPLR article 31—whose scope must be liberally construed—but rather as a narrow carve out that exempts 911 records from requests under the Freedom of Information Law and similar sunshine regimes. We thus join our colleagues in the Second Department in concluding that County Law § 308 (4) "is not intended to prohibit the disclosure of matter that is material and relevant in a civil litigation, accessible by a so-ordered subpoena or directed by a court to be disclosed in a discovery order" (Anderson, 134 AD3d at 1062).*

■ Defendants' remaining points do not require extended discussion. Contrary to their contention, Supreme Court properly determined that 911 records concerning other motorists stranded in the decedent's vicinity are "material and necessary in the prosecution . . . of [plaintiff's] action" (CPLR 3101 [a]), particularly because those records might bear upon the special duty that defendants allegedly owed the decedent (see Cuffy v City of New York, 69 NY2d 255, 260 [1987]; see generally Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406-407 [1968]). Indeed, accepting defendants' materiality argument would effectively obligate a plaintiff to prove his or her case in order to access the very evidence necessary to proving his or her case. Contrary to defendants' further contention, plaintiff's entitlement to discovery under CPLR article 31 is in no way constrained by the FOIL exemption for records whose disclosure would inflict an "unwarranted invasion of personal

---

* We reject defendants' alternative invitation to construe County Law § 308 (4) to permit disclosure of 911 records that directly involve the decedent, but not 911 records that involve other persons stranded during the storm. Such an outcome finds no support in the statutory text or legislative history, and adopting defendants' alternative construction would effectively rewrite section 308 (4) in the guise of construing it.

privacy" (Public Officers Law § 87 [2] [b]). The discovery provisions of CPLR article 31 operate independently of the Freedom of Information Law, and a litigant's entitlement to any particular evidentiary item under article 31 is not affected by the disclosability of that item under FOIL (*see Matter of M. Farbman & Sons v New York City Health & Hosps. Corp.*, 62 NY2d 75, 80-82 [1984]). Lastly, defendants' claim that plaintiff's discovery demand is unduly burdensome is improperly raised for the first time in the reply brief (*see Becker-Manning, Inc. v Common Council of City of Utica*, 114 AD3d 1143, 1144 [2014]), and, in any event, is without merit.

Accordingly, the order appealed from should be affirmed.

SMITH, J.P., CENTRA, PERADOTTO and LINDLEY, JJ., concur.

It is hereby ordered that the order so appealed from is unanimously affirmed without costs.