Matter of Ramirez v New York City Employees' Retirement Sys. (2020 NY Slip Op 07893)





Matter of Ramirez v New York City Employees' Retirement Sys.


2020 NY Slip Op 07893


Decided on December 23, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 23, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
COLLEEN D. DUFFY
BETSY BARROS
ANGELA G. IANNACCI, JJ.


2019-00328
 (Index No. 2355/17)

[*1]In the Matter of Jose Ramirez, appellant, 
v
New York City Employees' Retirement System, respondent.


Law Offices of Fausto E. Zapata, Jr., P.C., New York, NY, for appellant.
James E. Johnson, Corporation Counsel, New York, NY (Deborah A. Brenner and Diana Lawless of counsel), for respondent.



DECISION & ORDER
In a proceeding pursuant to CPLR article 78 to review a determination of the respondent reclassifying the petitioner's pension plan from Tier 3 to a Tier 3 revised plan, and to compel the respondent to reinstate the petitioner to Tier 3, the petitioner appeals from an order and judgment (one paper) of the Supreme Court, Kings County (Loren Bailey-Schiffman, J.), dated October 5, 2018. The order and judgment denied the petitioner's motion for leave to amend the petition, denied the petition, and dismissed the proceeding.
ORDERED that the order and judgment is affirmed, with costs.
The petitioner became employed as a housekeeping aide for New York City Health and Hospitals in March 1993. On April 27, 2004, the petitioner became a member of the respondent, New York City Employees Retirement Systems (hereinafter NYCERS), and was placed in Tier 4. In September 2012, the petitioner was appointed as a correction officer for the New York City Department of Correction, and left his prior position. The Department of Correction wrote to NYCERS, requesting that the petitioner's pension be transferred accordingly, and NYCERS initially placed the petitioner in the CF-20 plan in Tier 3. On or about April 19, 2017, after the petitioner had contacted NYCERS several times with questions about his pension, NYCERS wrote to the petitioner, advising him that it had recently conducted a review of his membership and determined that his current retirement plan, CF-20, was incorrect, and that it was mandated by law to place him in the Uniformed Correction Force 22 year plan (hereinafter CF-22).
The petitioner commenced the instant proceeding pursuant to CPLR article 78, alleging, inter alia, that NYCERS's determination changing his pension benefit plan from CF-20 to CF-22 was arbitrary and capricious. In an order and judgment dated October 5, 2018, the Supreme Court, among other things, denied the petition and dismissed the proceeding, determining that, pursuant to the Retirement and Social Security Law, NYCERS properly changed the petitioner's pension from CF-20 to CF-22. The petitioner appeals.
"NYCERS is the public employee retirement system responsible for administering the retirement programs for employees of the City and various City-related participating employers" (Matter of Kaslow v City of New York, 23 NY3d 78, 83). "City employees become members of NYCERS, which manages the system's invested funds and determines and pays out benefits to [*2]retirees according to requirements established by state and city law. In general, a member's retirement benefits vary by tier and plan, which are determined by date of membership and job title, respectively" (id. at 84). In March 2012, the Legislature amended certain provisions of the Retirement and Social Security Law (see L 2012, ch 18; Bill Jacket, L 2012, ch 18). Before the 2012 amendment, any person who became employed as a uniformed correction officer was eligible to join the CF-20 plan in Tier 3 (see Retirement and Social Security Law former § 504-d).
The 2012 amendment created the correction "revised plan," CF-22 (Retirement and Social Security Law § 501[25]; see 2012 NY Senate-Assembly Bill S6735, A9558). Pursuant to Retirement and Social Security Law § 504-a(b)(4-a), "no member of the uniformed force of the New York City department of correction who is a New York [C]ity uniformed correction . . . revised plan member shall be a participant in the twenty-year [CF-20] retirement program." A "New York [C]ity uniformed correction/sanitation revised plan member" "shall mean a member who becomes subject to the provisions of this article on or after April first, two thousand twelve, and who is a member of either the uniformed force of the New York [C]ity department of correction or the uniformed force of the New York [C]ity department of sanitation" (Retirement and Social Security Law § 501[25]).
Pursuant to the plain meaning of Retirement and Social Security Law § 501(25), the petitioner is a correction "revised plan member" and, therefore, was not entitled to CF-20 benefits. It is undisputed that, when the petitioner joined NYCERS in 2004, he joined as a Tier 4 member and was subject to article 15 of the Retirement and Social Security Law. Accordingly, he was not "subject to the provisions of" article 14, which governs Tier 3, until after April 1, 2012, when he was appointed as a correction officer (Retirement and Social Security Law § 501[25]).
The petitioner argues that the legislative history demonstrates that CF-22 is only applicable to correction officers who joined NYCERS after April 1, 2012. In interpreting a statute, the court must first look to the plain language of the statute, "as that represents the most compelling evidence of the Legislature's intent" (Matter of Tompkins County Support Collection Unit v Chamberlin, 99 NY2d 328, 335). However, "[a]lthough the plain language of the statute provides the best evidence of intent, 'the legislative history of an enactment may also be relevant and is not to be ignored, even if words be clear [because] [t]he primary goal of the court in interpreting a statute is to determine and implement the Legislature's intent'" (Kimmel v State of New York, 29 NY3d 386, 397, quoting Matter of Tompkins County Support Collection Unit v Chamberlin, 99 NY2d 328 at 335 [internal quotation marks and citations omitted]). The petitioner is correct that certain portions of the legislative history state that the 2012 amendment would impact members who first become members of NYCERS on or after April 1, 2012 (see Bill Jacket, L 2012, ch 18). However, as NYCERS argues, other portions of the legislative history state that the relevant amendments would apply to new New York City uniformed correction members (see id.).
In any event, as stated above, the plain language of Retirement and Social Security Law § 501(25) is clear and unambiguous, "and when the statutory language is clear and unambiguous, it should be construed so as to give effect to the plain meaning of the words used" (People v Brown, 115 AD3d 155, 158, affd 25 NY3d 247, citing, inter alia, Doctors Counsel v New York City Employees' Retirement Sys., 71 NY2d 669, 675). Here, the petitioner did not become subject to article 14 of the Retirement and Social Security Law until after April 1, 2012, and, accordingly, was properly reclassified from CF-20 to CF-22 (see Retirement and Social Security Law § 501[25]).
We reject the petitioner's argument that, because NYCERS initially placed him in CF-20, it was barred, pursuant to article V, § 7 of the New York Constitution and the doctrine of equitable estoppel, from changing his plan. "New York Constitution, article V, § 7 was adopted in 1938 in response to Roddy v Valentine (268 NY 228)" (Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO v Regan, 71 NY2d 653, 658). "[A]rticle V, § 7 provides in pertinent part that 'membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired'" (id. at 658 [emphasis omitted], quoting NY Const, art V, § 7; see Birnbaum v New York State Teachers Retirement Sys., 5 NY2d 1). Thus, under New York's constitution, "[t]he rights of public employees are . . . fixed as of the time the employee becomes a member of the system" (Civil Serv. Empls. [*3]Assn., Local 1000, AFSCME, AFL-CIO v Regan, 71 NY2d at 658).
The petitioner argues that, because he joined NYCERS in 2004, all benefits available under the Retirement and Social Security Law as a whole at that time were fixed and could not be changed. However, "[i]n securing a public employee's retirement rights, '[t]he Constitution does not, in terms or otherwise, preserve naked pension rights qua rights but, rather, the benefits of the contractual relationship . . . Thus, we must look to the contract for both the source and the definition of the plaintiff's benefits'" (id., quoting Mutterperl v Levitt, 89 Misc 2d 428, 431 [Sup Ct, Albany County], affd 41 NY2d 956). At the time the petitioner became a member of NYCERS, he was a Tier 4 member subject to article 15 of the Retirement and Social Security Law, and the 2012 amendments at issue in no way diminished or impaired his pension benefits. Accordingly, we agree with NYCERS that the 2012 amendments, as applied to the petitioner, did not violate his rights under the Pension Impairment Clause.
The petitioner's remaining contentions are without merit.
RIVERA, J.P., DUFFY, BARROS and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court