Matter of Ly v New York City Employees Retirement Sys. (2020 NY Slip Op 07890)





Matter of Ly v New York City Employees Retirement Sys.


2020 NY Slip Op 07890


Decided on December 23, 2020


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 23, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

REINALDO E. RIVERA, J.P.
COLLEEN D. DUFFY
BETSY BARROS
ANGELA G. IANNACCI, JJ.


2018-09343
 (Index No. 520388/17)

[*1]In the Matter of Michael Ly, et al., appellants,
v
New York City Employees Retirement System, respondent.


Kousoulas & Associates P.C., New York, NY (Antonia Kousoulas of counsel), for appellants.
James E. Johnson, Corporation Counsel, New York, NY (Deborah A. Brenner and Diana Lawless of counsel), for respondent.



DECISION & ORDER
In a proceeding pursuant to CPLR article 78 to review certain determinations of the respondent which reclassified the petitioners' respective pension plans from Tier 3 to a Tier 3 revised plan, and to compel the respondent to reinstate the petitioners to Tier 3, the petitioners appeal from a judgment of the Supreme Court, Kings County (Debra Silber, J.), dated June 8, 2018. The judgment denied the petition and dismissed the proceeding.
ORDERED that the judgment is affirmed, with costs.
The petitioner Michael Ly started working for the New York City Police Department as a police communications technician on September 5, 2010. He became a member of the respondent, New York City Employees Retirement System (hereinafter NYCERS), on September 16, 2010, and was placed in Tier 4. On September 6, 2012, he was appointed as a correction officer with the New York City Department of Correction. Thereafter, NYCERS placed him in Tier 3 with a 20 year Correction Force (hereinafter CF-20) pension plan. In or around July 2017, NYCERS advised him that his CF-20 plan was no longer in effect and that he was now in the Uniform Correction Force 22 year plan (hereinafter CF-22), a modified Tier 3 plan.
The petitioner Joe Lopez, Jr., became employed as a traffic agent for the New York City Police Department on July 12, 2010. On August 2, 2010, he joined NYCERS and was placed in Tier 4. On September 26, 2013, he was appointed as a correction officer, and NYCERS placed him in Tier 3 with a CF-20 plan. On September 13, 2017, NYCERS wrote to him, advising that his placement in the CF-20 plan was incorrect, and that it was mandated by law to place him into the CF-22 plan.
The petitioners commenced the instant proceeding pursuant to CPLR article 78, challenging NYCERS's determinations reclassifying them from CF-20 to CF-22. In the judgment appealed from, the Supreme Court denied the petition and dismissed the proceeding, reasoning that, pursuant to the Retirement and Social Security Law, NYCERS correctly determined that the [*2]petitioners were never entitled to CF-20 benefits and properly reclassified them to the appropriate plan, CF-22. The petitioners appeal.
"NYCERS is the public employee retirement system responsible for administering the retirement programs for employees of the City and various City-related participating employers" (Matter of Kaslow v City of New York, 23 NY3d 78, 83). "City employees become members of NYCERS, which manages the system's invested funds and determines and pays out benefits to retirees according to requirements established by state and city law. In general, a member's retirement benefits vary by tier and plan, which are determined by date of membership and job title, respectively" (id. at 84). In March 2012, the Legislature amended certain provisions of the Retirement and Social Security Law (see L 2012, ch 18; Bill Jacket, L 2012, ch 18). Before the 2012 amendment, any person who became employed as a uniformed correction officer was eligible to join the CF-20 plan in Tier 3 (see Retirement and Social Security Law former § 504-d).
The 2012 amendment created the correction "revised plan," CF-22 (Retirement and Social Security Law § 501[25]; see 2012 NY Senate-Assembly Bill S6735, A9558). Pursuant to Retirement and Social Security Law § 504-a(b)(4-a), "no member of the uniformed force of the New York [C]ity department of correction who is a New York city uniformed correction . . . revised plan member shall be a participant in the twenty-year [CF-20] retirement program." A "New York [C]ity uniformed correction/sanitation revised plan member" "shall mean a member who becomes subject to the provisions of this article on or after April first, two thousand twelve, and who is a member of either the uniformed force of the New York [C]ity department of correction or the uniformed force of the New York [C]ity department of sanitation" (Retirement and Social Security Law § 501[25]).
We agree with the Supreme Court that, pursuant to the plain meaning of Retirement and Social Security Law § 501(25), the petitioners are correction "revised plan members" and, therefore, were not entitled to CF-20 benefits. It is undisputed that, when the petitioners joined NYCERS in 2010, they joined as Tier 4 members and were subject to article 15 of the Retirement and Social Security Law. Accordingly, they were not "subject to the provisions of" article 14, which governs Tier 3, until after April 1, 2012, when they were appointed as correction officers (Retirement and Social Security Law § 501[25]).
The petitioners argue that the legislative history demonstrates that CF-22 is only applicable to correction officers who joined NYCERS after April 1, 2012. In interpreting a statute, the court must first look to the plain language of the statute, "as that represents the most compelling evidence of the Legislature's intent" (Matter of Tompkins County Support Collection Unit v Chamberlin, 99 NY2d 328, 335). However, "[a]lthough the plain language of the statute provides the best evidence of . . . intent, 'the legislative history of an enactment may also be relevant and is not to be ignored, even if words be clear [because] [t]he primary goal of the court in interpreting a statute is to determine and implement the Legislature's intent'" (Kimmel v State of New York, 29 NY3d 386, 397, quoting Matter of Tompkins County Support Collection Unit v Chamberlin, 99 NY2d at 335). The petitioners are correct that certain portions of the legislative history state that the 2012 amendment would impact members who first become members of NYCERS on or after April 1, 2012 (see NY Bill Jacket, L 2012, ch 18). However, as NYCERS argues, other portions of the legislative history state that the relevant amendments would apply to new New York City uniformed correction members (see id.).
In any event, as stated above, the plain language of Retirement and Social Security Law § 501(25) is clear and unambiguous, "and when the statutory language is clear and unambiguous, it should be construed so as to give effect to the plain meaning of the words used" (People v Brown, 115 AD3d 155, 158, affd 25 NY3d 247, citing, inter alia, Doctors Counsel v New York City Employees' Retirement Sys., 71 NY2d 669, 675). Here, the petitioners did not become subject to article 14 of the Retirement and Social Security Law until after April 1, 2012, and, accordingly, were properly reclassified from CF-20 to CF-22 (see Retirement and Social Security Law § 501[25]).
We reject the petitioners' argument that, because NYCERS initially placed them in CF-20, it was barred, pursuant to article V, § 7 of the New York Constitution and the doctrine of equitable estoppel, from changing their plan. "New York Constitution, article V, § 7 was adopted in 1938 in response to Roddy v Valentine (268 NY 228)" (Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO v Regan, 71 NY2d 653, 658). "[A]rticle V, § 7 provides in pertinent part that 'membership in any pension or retirement system of the state or of a civil division thereof shall be a contractual relationship, the benefits of which shall not be diminished or impaired'" (id. at 658 [emphasis omitted], quoting NY Const, art V, § 7; see Birnbaum v New York State Teachers Retirement Sys., 5 NY2d 1). Thus, under New York's constitution, "[t]he rights of public employees are . . . fixed as of the time the employee becomes a member of the system" (Civil Serv. Empls. Assn., Local 1000, AFSCME, AFL-CIO v Regan, 71 NY2d at 658). Here, as explained above, the petitioners were never entitled to CF-20 benefits to begin with and, thus, did not have a contractual right to those benefits (cf. Matter of Donner v New York City Employees' Retirement Sys., 33 NY2d 413, 416).
Moreover, as NYCERS argues, it was mandated by statute to correct errors in the administration of retirement benefits (see Administrative Code of City of NY § 13-182). "As a general rule, estoppel may not be invoked against a governmental body to prevent it from performing its statutory duty or from rectifying an administrative error" (Agress v Clarkstown Cent. School Dist., 69 AD3d 769, 771; see Matter of Galanthay v New York State Teachers' Retirement Sys., 50 NY2d 984, 986). Here, NYCERS rectified an error in reclassifying the petitioners from the CF-20 plan to the CF-22 plan, which it was required to do by statute. Accordingly, we agree with the Supreme Court that the petitioners cannot invoke the doctrine of equitable estoppel to prevent NYCERS from doing so. Therefore, we affirm the judgment appealed from.
RIVERA, J.P., DUFFY, BARROS and IANNACCI, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court