[934 NYS2d 171]

In the Matter of SHERNISE C., a Child Alleged to be Abused.
ADMINISTRATION FOR CHILDREN'S SERVICES, Petitioner-
Respondent; RHONDA R. et al., Respondents; STEVEN BANKS,
Nonparty Appellant.

Second Department, November 15, 2011

**APPEARANCES OF COUNSEL**

*Steven Banks*, New York City (*Tamara A. Steckler* and *Claire V. Merkine* of counsel), nonparty appellant pro se.

*Michael A. Cardozo, Corporation Counsel*, New York City (*Larry A. Sonnenshein* and *Sharyn Rootenberg* of counsel; *Chaim E. Bryski* on the brief), for petitioner-respondent.

**OPINION OF THE COURT**

COHEN, J.

"There is no more worthy object of the public's concern" than the welfare of children (*Wyman v James*, 400 US 309, 318 [1971]). However, in our societal zeal to protect them, our most vulnerable and most valuable asset, we must be careful not to trample upon their constitutional rights. An innocent child should certainly have as much right to be free from an unreasonable search and seizure as someone suspected of committing a crime. Thus, while harmonizing the State's extraordinary interest in protecting a child's welfare from the potential for the invasion of a child's constitutional rights may be at times difficult, a proper balance must be struck since even the most heinous crime of child sexual abuse does not automatically provide cause to ignore the rights of the victim.

Family Court Act § 1027 (g) mandates forensic medical examination in all cases of alleged abuse. Based on the particular and unique facts of this matter, the mandated application of Family Court Act § 1027 (g) to the subject child, Shernise C. (hereinafter Shernise) is unreasonable and violates her Fourth Amendment rights.

## I. Factual and Procedural Background

In 2008, when Shernise was just shy of her 14th birthday, she gave birth to a daughter, Emily C. On August 17, 2010, a DNA test was conducted which established a 99.97% chance that Shernise's stepfather had fathered her child. Shernise, Emily, and Shernise's four-year-old sister, Stephani R., were removed from the home and placed in the custody of the petitioner, Administration for Children's Services (hereinafter ACS). ACS filed petitions against Shernise's stepfather and mother alleging that Shernise was abused and the other children were derivatively abused.

At a preliminary court appearance, the Family Court, sua sponte, issued an order dated August 24, 2010, authorizing and directing ACS to arrange for forensic medical examinations of the children, with color photographs to be taken of any visible areas of trauma, pursuant to Family Court Act § 1027 (g). The attorney for Shernise appeals from that order.

The attorney for Shernise moved by order to show cause, in effect, to vacate so much of the order dated August 24, 2010, as authorized and directed the petitioner to arrange for a forensic medical examination of Shernise and to prohibit ACS from taking Shernise for a forensic medical examination, arguing that, given the extreme invasion of Shernise's Fourth Amendment rights, the likelihood of trauma from the examination, and the absence of a compelling need for additional evidence of intercourse, the mandate that such an examination nevertheless be conducted is unconstitutional as applied to Shernise. In an order dated August 27, 2010, the Family Court temporarily stayed enforcement of the order dated August 24, 2010, and denied the motion. The attorney for Shernise appeals from so much of the order dated August 27, 2010, as denied the motion. By decision and order on motion of this Court dated September 29, 2010, counsel's motion to stay enforcement of the first order appealed from and to prohibit a medical examination of Shernise pending the hearing and determination of the appeals was granted.

## II. Analysis

ACS contends that Family Court Act § 1027 (g) can be interpreted as conferring discretion upon the Family Court as to whether to direct a medical examination of a child who is the subject of an abuse proceeding, and that this Court therefore need not reach the issue of whether the statute is unconstitutional as applied to Shernise. We recognize that under established principles of judicial restraint, courts should not address constitutional issues when a decision can be reached on other grounds (see Matter of Syquia v Board of Educ. of Harpursville Cent. School Dist., 80 NY2d 531, 535 [1992]; Matter of Beach v Shanley, 62 NY2d 241, 254 [1984]). However, a court may not avoid a constitutional issue by interpreting a challenged statute in a manner which contravenes its plain wording and legislative purpose (see Matter of Wood v Irving, 85 NY2d 238, 245 [1995]; People v Smith, 63 NY2d 41, 79 [1984], cert denied 469 US 1227 [1985]).

Family Court Act § 1027 (g) provides:

"In all cases involving abuse the court *shall* order, and in all cases involving neglect the court may order, an examination of the child pursuant to section two hundred fifty-one of this act or by a physician appointed or designated for the purpose by the court. As part of such examination, the physician

shall arrange to have colored photographs taken as soon as practical of the areas of trauma visible on such child and may, if indicated, arrange to have a radiological examination performed on the child. The physician, on the completion of such examination, shall forward the results thereof together with the color photographs to the court ordering such examination. The court may dispense with such examination in those cases which were commenced on the basis of a physical examination by a physician. Unless colored photographs have already been taken or unless there are no areas of visible trauma, the court shall arrange to have colored photographs taken even if the examination is dispensed with" (emphasis added).

Family Court Act § 251, referenced in the statute, permits the Family Court to direct physical or mental examinations by professionals designated for that purpose by the court for any person within its jurisdiction after the filing of a petition under the Family Court Act.

We disagree with ACS's contention that Family Court Act § 1027 (g) should be read as affording the Family Court discretion to dispose of exams where they are unnecessary or unwarranted. "The primary goal of the court in interpreting a statute is to determine and implement the Legislature's intent" (*Matter of Tompkins County Support Collection Unit v Chamberlin*, 99 NY2d 328, 335 [2003]). Further, a statute will not be read to dictate an absurd or unreasonable result (*see People v Santi*, 3 NY3d 234, 243 [2004]; *Williams v Williams*, 23 NY2d 592, 598-599 [1969]). When interpreting a statute, the judiciary must first look "to its plain language, as that represents the most compelling evidence of the Legislature's intent" (*Matter of Tompkins County Support Collection Unit v Chamberlin*, 99 NY2d at 335). Here, the legislative intent is clear from the statute's plain language, which provides that the court *shall* order examinations in all abuse cases (*see* Family Ct Act § 1027 [g]; *Matter of Shanasia H.*, 19 AD3d 694 [2005]; *Matter of Anne BB.*, 202 AD2d 806 [1994]). This intent is especially clear when contrasted with the discretion the statute affords courts in ordering such examinations in neglect cases.

We note that the Family Court directed ACS to arrange for a medical examination of Shernise, when such examinations should be conducted by court-appointed professionals (*see* Fam-

ily Ct Act § 1027 [g]; § 251; *Matter of Michelle A.*, 140 AD2d 604 [1988]). However, given the mandatory nature of an order directing an examination, we decline ACS's request to find that the order authorizing and directing a medical examination of Shernise should have been vacated on that basis without reaching the constitutional issue.

The Fourth Amendment, applied to the states via the Fourteenth Amendment, guarantees individuals the right "to be secure in their persons . . . against unreasonable searches and seizures" by government officials (US Const Amend IV; *see* NY Const, art I, § 12). It protects not only the individual's home and property, but also one's person and bodily integrity (*see Matter of Patchogue-Medford Congress of Teachers v Board of Educ. of Patchogue-Medford Union Free School Dist.*, 70 NY2d 57, 66 [1987]). "Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted" (*Bell v Wolfish*, 441 US 520, 559 [1979]). Whether a particular search meets the reasonableness standard is judged by "balancing the nature of the intrusion on the individual's privacy against the promotion of legitimate governmental interests" (*Board of Ed. of Independent School Dist. No. 92 of Pottawatomie Cty. v Earls*, 536 US 822, 829 [2002]; *see Vernonia School Dist. 47J v Acton*, 515 US 646, 652-653 [1995]; *New Jersey v T. L. O.*, 469 US 325, 337 [1985]; *Camara v Municipal Court of City & County of San Francisco*, 387 US 523, 536-537 [1967]).

Regardless of whether the traditional probable cause requirement or some lesser requirement of individualized suspicion applies here under the "special needs" doctrine (*see Vernonia School Dist. 47J v Acton*, 515 US at 653; *New Jersey v T. L. O.*, 469 US at 351 [Blackmun, J., concurring]; *Greene v Camreta*, 588 F3d 1011, 1026 n 11 [2009] [noting Circuit split]), reasonableness remains the ultimate touchstone of the Fourth Amendment (*see Michigan v Fisher*, 558 US —, —, 130 S Ct 546, 548 [2009]). The court must balance the government's need to search with the invasion to be endured (*see Board of Ed. of Independent School Dist. No. 92 of Pottawatomie Cty. v Earls*, 536 US at 829; *Winston v Lee*, 470 US 753 [1985]).

■ Strip searches and visual body cavity searches implicate fundamental Fourth Amendment rights (*see Bell v Wolfish*, 441 US at 558; *People v Mothersell*, 14 NY3d 358, 366 [2010]; *People v Hall*, 10 NY3d 303, 315 [2008] [Ciparick, J., concurring], *cert denied* 555 US 938 [2008]). Here, it is the victim of the alleged

abuse who is being subjected to a search, although a victim's rights are entitled to no less protection than that of an accused. Indeed, unlike the Fifth and Sixth Amendments, which refer to the rights of an accused in criminal cases, by clear reference, the Fourth Amendment applies to all people, including those accused and those victimized (*see* US Const Amend IV; *United States v Verdugo-Urquidez*, 494 US 259 [1990]; *see generally Tenenbaum v Williams*, 193 F3d 581 [1999], *cert denied* 529 US 1098 [2000]; *Security & Law Enforcement Empls., Dist. Council 82, Am. Fedn. of State, County & Mun. Empls., AFL-CIO by Clay v Carey*, 737 F2d 187 [1984]). Accordingly, Shernise, as the alleged victim, is entitled to no less protection under the Fourth Amendment than her stepfather would enjoy as an accused.

"[A]dolescent vulnerability intensifies the patent intrusiveness of the exposure" and may result in serious emotional damage (*Safford Unified School Dist. # 1 v Redding*, 557 US —, —, 129 S Ct 2633, 2641 [2009]). " '[I]t does not require a constitutional scholar to conclude that a nude search of a 13-year-old child is an invasion of constitutional rights of some magnitude' " (557 US at —, 129 S Ct at 2644 [Stevens, J., concurring in part and dissenting in part] [some internal quotation marks omitted], quoting *Doe v Renfrow*, 631 F2d 91, 92-93 [1980], *cert denied* 451 US 1022 [1981]). This concern is even greater where the child has been the victim of sexual abuse (*see N.G. v Connecticut*, 382 F3d 225, 232-233 [2004]; *Tenenbaum v Williams*, 193 F3d at 598).

This intrusion must be balanced against the State's "extraordinarily weighty" interest in protecting children (*Darryl H. v Coler*, 801 F2d 893, 902 [1986]; *Greene v Camreta*, 588 F3d at 1015), as well as its interest in protecting the rights of an individual accused of child abuse, by discovering and preserving evidence of abuse, or ascertaining the absence thereof. In this regard, while child protective proceedings pursuant to Family Court Act article 10 are civil in nature, the accused is entitled to due process, although that right is not absolute, as "[t]he Family Court must balance the due process rights of an article 10 respondent with the mental and emotional well being of the child" (*Matter of Q.-L. H.*, 27 AD3d 738, 739 [2006]; *see* Family Ct Act § 1011; *see also Matter of Fatima M.*, 16 AD3d 263 [2005]). Simply, the intent of Family Court Act article 10 is safeguarding the mental and emotional well-being of children, while striving to ensure that those accused receive due process (*see Matter of Michael WW.*, 203 AD2d 763 [1994]).

The examination policy set forth in Family Court Act § 1027 (g) is generally effective in discovering and preserving evidence of child abuse. "A visual inspection provides quick and objective information. It can alleviate the need for any further inquiry or make plain the need for additional investigation" (*Darryl H. v Coler*, 801 F2d at 902). However, as compelling as the State's interest is in this case, we are not persuaded that these interests need to be met via the medical examination mandated by Family Court Act § 1027 (g). Indeed, the DNA evidence of Emily's parentage already conclusively establishes that the respondent stepfather sexually abused Shernise (*see* Family Ct Act § 1012 [e] [iii]), and indelibly preserves unequivocal evidence of the abuse. While the physical examination and colored photographs taken of Shernise more than two years after the birth of her daughter have the possibility, albeit remote, of revealing additional evidence of abuse, the examination, as a tool of "early and accurate diagnos[e]s" (Besharov, Practice Commentary, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 1027, at 330 [1983 ed]), has been rendered, at best, cumulative and, at worst, superfluous.

Where a bodily intrusion is concerned, the court must give careful consideration to "not only the probable worth of the evidence to the investigation, but the nature of alternative means, if any, for obtaining the evidence" (*Matter of Abe A.*, 56 NY2d 288, 298 [1982]; *see Winston v Lee*, 470 US 753 [1985]). When making our Fourth Amendment inquiry, we must consider whether there is a " 'clear indication' that the intrusion will supply substantial probative evidence" (*Matter of Abe A.*, 56 NY2d at 297, quoting *Schmerber v California*, 384 US 757, 770 [1966]; *see Cupp v Murphy*, 412 US 291, 295 [1973]).

In the instant matter, given the conclusive evidence of abuse provided by the DNA test results, the State's need to subject Shernise to a highly intrusive physical examination is so diminished as to render the search unreasonable under the Fourth Amendment. Thus, the mandated application of Family Court Act § 1027 (g) to Shernise under the particular facts of this case is unreasonable and violates her Fourth Amendment rights.

We decline to address the attorney for the child's facial challenge to the statute asserted for the first time on appeal. Facial challenges, especially in the Fourth Amendment context, are discouraged (*see Sibron v New York*, 392 US 40, 59 [1968]; *Warshak v United States*, 532 F3d 521, 529 [2008]). Further, since

we hold that the statute is unconstitutional as applied to Shernise, the broader challenge, even if properly before us, would not need to be addressed.

Accordingly, the motion of the attorney for the child, in effect, to vacate so much of the order dated August 24, 2010, as authorized and directed the petitioner to arrange for a forensic medical examination of Shernise and to prohibit ACS from taking Shernise for such an examination should have been granted.

Consequently, the order dated August 27, 2010 is reversed insofar as appealed from, on the law, the motion of the attorney for the child, in effect, to vacate so much of the order dated August 24, 2010, as authorized and directed the petitioner to arrange for a forensic medical examination of Shernise, and to prohibit the petitioner from taking Shernise for a forensic medical examination is granted, and the appeal from the order dated August 24, 2010, is dismissed as academic in light of our determination of the appeal from the order dated August 27, 2010.

PRUDENTI, P.J., ANGIOLILLO and FLORIO, JJ., concur.

Ordered that the order dated August 27, 2010 is reversed insofar as appealed from, on the law, without costs or disbursements, and the motion of the attorney for the child, in effect, to vacate so much of the order dated August 24, 2010, as authorized and directed the petitioner to arrange for a forensic medical examination of the subject child, and to prohibit the petitioner from taking the subject child for a forensic medical examination is granted; and it is further,

Ordered that the appeal from the order dated August 24, 2010 is dismissed as academic, without costs or disbursements, in light of our determination on the appeal from the order dated August 27, 2010.