■ In the Matter of VIVIENNE BOBBI-HADIYA S., an Infant. MAKENA ASANTA MALIKA MCK. et al., Appellants; ADMINISTRATION FOR CHILDREN'S SERVICES et al., Respondents. [5 NYS3d 418]—

Final order of disposition, Family Court, New York County (Stewart H. Weinstein, J.), entered on or about July 9, 2013, which permanently terminated the mother's and father's parental rights, and committed the subject child to the joint custody of the Commissioner of Social Services and Catholic Guardian Society and Home Bureau for the purpose of adoption, and order of fact-finding, same court (Rhoda J. Cohen, J.), entered on or about November 4, 2011, which found that the mother and father severely abused, and abused and neglected, their child, unanimously affirmed, without costs. Appeals from orders entered on or about August 3, 2012, and on or about August 7, 2012, unanimously dismissed, without costs, as superseded by the appeal from the final order, and as abandoned, respectively.

The record supports Family Court's determination that there was clear and convincing evidence that both parents severely abused the subject child on the basis that the father recklessly caused her injuries under circumstances evincing a depraved indifference to human life, and the mother recklessly allowed such injuries to be inflicted under circumstances evincing a depraved indifference to human life (Family Ct Act § 1051 [e]; Social Services Law § 384-b [8] [a]).

Expert testimony established that the then three-month-old infant's four fractured ribs, fractured collarbone, fractured femur, and subdural hematomas resulted from being squeezed, shaken, and possibly thrown. It is undisputed that the father was her primary caretaker, as the mother worked outside the home, and that the child twice needed emergency assistance while in his sole care. Moreover, the father's failure to testify warranted drawing the strongest adverse inference against him (*Matter of Nassau County Dept. of Social Servs. v Denise J.*, 87 NY2d 73, 79 [1995]). Other accidental causes and diseases were ruled out as explanations for the child's severe injuries, and no other explanation was provided by the parents. The father's prior plea to manslaughter for recklessly killing his two-month-old son under similar circumstances established that he was aware of and consciously disregarded the risk that shaking the subject child could seriously injure her (*Matter of Dashawn W. [Antoine N.]*, 21 NY3d 36, 49 [2013]).

The mother knew of the father's earlier manslaughter conviction but left the child in his care. Even if she could have initially reasonably believed that he was innocent, or have placed little weight on a much earlier manslaughter conviction, she never reevaluated her beliefs, even when he was convicted of a violent assault, and a related perjury conviction, which demonstrated his ability to misstate material facts. Nor did she reevaluate his suitability as a caregiver when the subject child twice required emergency assistance within months, while in his care, and repeatedly appeared lethargic and vomited when in his care. She thus acted recklessly by leaving the child in the father's care and allowing the abuse to be inflicted. Moreover, the Family Court properly based its findings on indirect evidence, and the parents' inability to explain the child's injuries, which were deemed nonaccidental by the expert (*see Matter of Dashawn W.*, 21 NY3d at 49; *Matter of Amirah L. [Candice J.]*, 118 AD3d 792 [2d Dept 2014]).

Where the child was already examined and her injuries documented by X rays, an MRI, and skeletal exams, where other causes of her injuries were ruled out by tests and exams, and where she even had a hole drilled in her skull to alleviate her head injuries, the Family Court providently exercised its discretion in denying the mother's motion for yet another independent medical examination of the child (Family Ct Act § 1038 [c]; *Matter of Jessica R.*, 78 NY2d 1031, 1033 [1991]; *see also* Family Ct Act § 1027 [g]; *Matter of Shernise C. [Rhonda R.]*, 91 AD3d 26, 32-33 [2d Dept 2011]).

In connection with its finding of severe abuse, the Family

Court properly found that diligent efforts should be excused as to the father, in light of his manslaughter conviction and inability to explain or otherwise accept responsibility for the injuries to the subject child (Social Services Law § 384-b [8] [a] [iv]; *Dashawn W.*, 21 NY3d at 54).

The Family Court also properly concluded that diligent efforts to reunite the mother and subject child were no longer required because the mother refused to believe the father posed any risk to the child, and she continued to leave her in his sole care, which posed a threat to the child's health and safety (Family Ct Act § 1039-b [a]; *Matter of Marino S.*, 100 NY2d 361, 372 [2003], *cert denied* 540 US 1059 [2003]; *Matter of Rayshawn F.*, 36 AD3d 429, 429-430 [1st Dept 2007]).

Finally, in the termination of parental rights proceeding, the Family Court properly granted the agency's summary judgment motion based on the prior finding of severe abuse. Such a finding is expressly admissible in a proceeding to terminate parental rights pursuant to Social Services Law § 384-b, as long as the Family Court states the grounds for its determination and makes such a finding by clear and convincing evidence, which it did here (Family Ct Act § 1051 [e]). The mother identifies no unresolved or triable issues that would have warranted denial of summary judgment on the issue of severe abuse.

Nor was a suspended judgment warranted as to the mother, as she refused to acknowledge that the father posed a threat to the child, denied any responsibility for her own role in the abuse, and testified equivocally regarding her long term intention to remain separated from him, whereas the child was placed in a stable home with the maternal grandfather (*see Matter of Jayvon Nathaniel L. [Natasha A.]*, 70 AD3d 580 [1st Dept 2010]; *see also Matter of Michael B.*, 80 NY2d 299, 311 [1992]). Concur—Sweeny, J.P., Renwick, Saxe, Manzanet-Daniels and Gische, JJ.