Matter of Jaiden H. v Jeanette H. (2024 NY Slip Op 04907)

Matter of Jaiden H. v Jeanette H.

2024 NY Slip Op 04907

Decided on October 08, 2024

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: October 08, 2024

Before: Manzanet-Daniels, J.P., Singh, Mendez, Rosado, O'Neill Levy, JJ. 

Docket No. NA-1969/23, NA-1970/23 Appeal No. 2744 Case No. 2023-03644 

[*1]In the Matter of Jaiden H., and Another, Children Under Eighteen Years of Age etc., Administration for Children's Services, Petitioner-Respondent,
v
Jeanette H., Respondent-Appellant, Kenneth H., Respondent.

Law Office of Thomas R. Villecco, P.C., Jericho (Thomas R. Villecco of counsel), for appellant.
Sylvia O. Hinds-Radix, Corporation Counsel, New York (Hannah J. Sarokin of counsel), for respondent.
Dawne Mitchell, The Legal Aid Society, New York (Diane Pazar of counsel), attorney for the child, Jailyh H.,
Donna C. Chin, New York, attorney for the child, Jaiden H.

Order of fact-finding, Family Court, Bronx County (Robert D. Hettleman, J.), entered on or about July 19, 2023, which, to the extent appealed, found, after a hearing, that respondent mother abused and severely abused Jaiden H., and derivatively abused Jailyn H., unanimously affirmed, without costs.
A preponderance of the evidence supports Family Court's finding that the mother abused Jaiden, who eventually died of the severe injuries inflicted on him (see Family Ct Act § 1046[b][i]). Petitioner made a prima facie showing of abuse by establishing through medical records and expert medical testimony that, at the age of two months, the child presented to the hospital and was found to have 21 fractures to his ribs, arms, wrists and legs, multiple burns on his torso, and brain hemorrhaging and swelling (see Matter of Travis S. [Moezel J. —Taijon S.], 203 AD3d 478, 478 [1st Dept 2022]). Although 4 of the 15 rib fractures were adequately explained by testimony of medical experts that those fractures resulted from efforts to resuscitate the child after he was found unresponsive, the mother failed to explain how the child sustained the remaining 11 fractures that were determined to be in various stages of healing and the result of abuse (see Matter of Y./A. Children, 287 AD2d 355 [1st Dept 2001]; Matter of Raymond C., 151 AD2d 388, 389-390 [1st Dept 1989]).
The mother's contention that the 11 rib fractures could have been caused while the child's family were hugging him is unconvincing given that the child abuse pediatrician's expert testimony established that to sustain those rib fractures he would have to have been "really squeezed tightly" or forcefully, and the mother's testimony that she was always present when Jailyn or other family members held him. The mother cited no incidents involving anyfamily member holding the child inappropriately, which would support the conclusionthat the fractures occurred when he was being held by afamily member. Because the mother's explanation for Jaiden having 11 rib fractures was implausible or otherwise unreasonable, contradictory, and unsubstantiated, she failed to rebut the presumption of culpability with a credible and reasonable explanation of how the child sustained them or otherwise demonstrate why she is not guilty of abuse (see Matter of Nasir J., 35 AD3d 299, 299 [1st Dept 2006]). Nor does her explanation adequately explain how Jaiden's legs, forearms and wrists were fractured (see Matter of Radames S. [Maria I.], 112 AD3d 433, 434 [1st Dept 2013]).
As to Jaiden's burns, two different explanations were provided, but the mother never provided a reasonable explanation as to how a leak from a colic belt could cause distinct burns on the infant's mid-chest, the side of his belly, and on his lower abdomen (see Matter of Benjamin L., 9 AD3d 153, 155 [1st Dept 2004]). Nor does she offer a basis for disturbing Family Court's credibility determination that her statement as to how the child was burned was not [*2]fully consistent with the father's explanation (see Matter of Irene O., 38 NY2d 776, 777 [1975]).
Even without expert testimony that the burns were the result of abuse, petitioner met its prima facie burden through evidence of the violence perpetrated on the two-month-old infant and the pain he suffered in multiple incidents of abuse. This supports Family Court's finding that the mother abused Jaiden by creating or allowing to be created a substantial risk of physical injury to her son by other than accidental means which would be likely to cause death, disfigurement, or impairment (see Matter of Matthew O. [Kenneth O.], 103 AD3d 67, 73 [1st Dept 2012]).
The finding of derivative abuse of Jailyn was warranted by the nature and severity of the direct abuse—blunt force trauma resulting in Jaiden being brain dead  which demonstrated that the mother's parental judgment was so impaired as to place Jailyn at substantial risk of harm (see Matter of Semenah R. [Keno R.—Shanika R.], 135 AD3d 503, 504 [1st Dept 2016]). That Jailyn was 13 years old when Jaiden was abused and unaware of the abuse is of no moment given that she was residing in the home when the abuse occurred.
Petitioner established prima facie that Jaiden was "severely abused" by the mother (see Social Services Law § 384-b[a][8][iii][C]; [iv]; Matter of Philip M., 82 NY2d 238, 243 [1993]). Petitioner introduced expert medical testimony of the child abuse pediatrician, who examined Jaiden and opined that his factures were the result of child abuse, and the expert testimony of the neurosurgeon, who examined the child's medical record and opined that the positive predictive value of the child's head injuries were between 85 to 100 percent value of abuse of head trauma based upon the constellation of injuries found on his body (see Matter of Kaylene H. [Brenda P.H.], 133 AD3d 477, 477-478 [1st Dept 2015]).
That no pediatrician discovered Jaiden's rib fractures despite petitioner regularly bringing him to his routine check-ups and for emergency treatment when he was burned is of no moment given the child abuse pediatrician's expert testimony that Jaiden's rib fractures were not "obvious clinically." The neurosurgeon being unable to identify the specific mechanism that caused Jaiden's neurological injuries does not require a different result, because petitioner was not required to show that the mother or the father actually inflicted the injuries, or whether they did so together (see Matter of Nyheem E. [Jamila G.], 134 AD3d 517, 518 [1st Dept 2015]).
Even assuming that the father alone inflicted the injuries, the mother remains culpable for permitting the abuse to occur (see Family Ct Act § 1012[e][i]; Matter of Heaven C.E. [Tiara C.], 164 AD3d 1177, 1178 [1st Dept 2018]). The record belies her contention that she did not know and could not have known that the father was abusing Jaiden, because domestic incident reports establish that she had previously accused him of assaulting and threating [*3]to kill her, and the 911 call she made to the police three days before the child sustained his traumatic brain injuries demonstrate that she knew that the father was "pushing the baby down." Petitioner established thatcontinuing to leave Jaiden in the father's care demonstrated that the mother evinced a depraved indifference to her son's life by recklessly allowing the abuse to be inflicted (see Matter of Vivienne Bobbi-Hadiya S. [Makena Asanta Malika McK.], 126 AD3d 545, 546 [1st Dept 2015], lv denied 25 NY3d 909 [2015]).THIS CONSTITUTES THE DECISION AND ORDER OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: October 8, 2024